## CLARK v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 12, 1920.)

No. 3375.

1. **Larceny ⚖6, 88—Mail carrier's pay checks subject of larceny from government, and sentence is not dependent on value; "record;" "voucher."**

 Under Criminal Code, § 47 (Comp. St. § 10214), denouncing theft from the government of any money, property, "record," "voucher," or valuable thing an undelivered government pay check for a mail carrier has some intrinsic value to the government, and therefore, regardless of the smallness of its value, may be the subject of larceny; nor will the smallness of its intrinsic value necessarily govern or measure the sentence to be imposed therefor, which, within the limit fixed by statute, is within the discretion of the court. Such a check is also the subject of larceny, as being a "record" or "voucher" mentioned in the statute.

 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Record; Voucher.]

2. **Larceny ⚖8—Pay check held not to have passed from government's possession when taken; "delivery."**

 Where mail carrier's pay check, at the time of the taking thereof for which defendant was prosecuted under Criminal Code, § 47 (Comp. St. § 10214), had been delivered by the government to the post office superintendent, to be handed, with others, to various mail carriers on their signing the pay roll, it had not been delivered nor had it passed out of the possession of the government; "delivery" being transmitting the

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

possession of a thing from one person into the power or possession of another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delivery.]

In Error to the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

Walter W. Clark was convicted of an offense, and brings error. Affirmed.

T. D. Fletcher, of Chattanooga, Tenn., for plaintiff in error.

W. T. Kennerly, U. S. Atty., of Knoxville, Tenn.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The plaintiff in error was convicted in the District Court of the United States for the Eastern District of Tennessee, upon the first count in an indictment charging him with unlawfully and feloniously stealing or purloining a certain voucher or pay check No. 9191, dated November 15, 1918, amounting to $44.80, and drawn upon the Hamilton National Bank in favor of A. N. Fears, a mail carrier in the employ of the United States, and working in the city of Chattanooga, and out of the Chattanooga post office. Said check being signed by T. Charlton Howell, postmaster, and countersigned by John C. Shelton, assistant postmaster, at Chattanooga, Tenn., which voucher or check at that time had not been delivered to the payee named therein, but was then and there the property of the United States, and in its possession.

[1] The plaintiff in error relies for reversal upon two assignments of error: (1) There was no evidence to support the verdict. (2) The court erred in failing and refusing to direct the jury to return a verdict of not guilty.

This first count of the indictment charges an offense under section 47 of the Criminal Code of the United States (Comp. St. § 10214), which in part reads as follows:

"Whoever shall embezzle, steal or purloin any money, property, record, voucher or valuable thing whatever of the moneys, goods, chattels, records, or property of the United States shall be fined," etc.

It is contended on the part of the plaintiff in error that:

"An unindorsed and undelivered check has no other value to the drawer than a blank check would have, unless such special value is alleged and proved, and the obligation expressed on such check is not the subject of larceny."

This contention might obtain if it were necessary or proper to apply the common-law definition of larceny to the crime charged in this indictment. In the case of U. S. v. Davis, 5 Mason, 356, Fed. Cas. No. 14,930, the indictment charged a larceny under section 16 of chapter 9 of the Laws of 1790 (1 Stat. 112), which provided that:

"If any person * * * shall take and carry away, with an intent to steal or purloin, the personal goods of another."

In that case it was properly held that the common-law rule of interpretation should be applied; that:

"In the strict sense of the common law, personal goods are goods which are movable, belong to, or are the property of some person and which have an intrinsic value; that bonds, bills, and notes which are choses in action, are not esteemed by common law goods whereof larceny may be committed."

But, even under the common-law rule, conviction would be sustained if the paper itself had any intrinsic value, no matter how small that value might be. This question is fully discussed and authorities cited in the case of Jolley v. U. S., 170 U. S. 402, at page 407, 18 Sup. Ct. at page 626, 42 L. Ed. 1085. In the case of Keller v. U. S. (C. C. A. 7) 168 Fed. 697, 94 C. C. A. 368, it was held that six blank checks, with stubs attached, each of the value of one cent, constituted property, the subject of larceny, under Revised Statutes, § 5456.[1] Section 5456 of the Revised Statutes is now section 46 of the Criminal Code, which in part reads as follows:

"Whoever shall rob another * * * of personal property belonging to the United States or shall feloniously take and carry away the same, shall be fined," etc.

Section 47 of the Criminal Code relates to the same subject-matter and defines a crime kindred in its nature to the crime defined in section 46, and is therefore subject to the same construction, as to the value of the thing taken, as the construction given section 46 in the case of Keller v. U. S., supra. The fact that time and labor had been expended upon this check by an officer of the United States, at the expense of the United States, in preparing it for the purposes for which it was intended, would certainly not make the check less valuable to the United States than a blank check, nor would the government be required to show that it was of the value of the amount written therein. If it was of any value whatever to the United States, then, in that respect, the verdict of guilty would be fully sustained by the evidence.

However, counsel for plaintiff in error insists that, even if this check had an intrinsic value, that value was so trifling that the punishment inflicted is so severe as to be wholly out of proportion to such a trivial offense. The intrinsic value of the check before a delivery is of comparatively small importance in determining the criminal intent or the moral turpitude involved in the commission of the crime charged in the indictment. This defendant, if he stole the check, was not stealing it for the value of the paper upon which it was written. He was stealing it for the purpose of unlawfully securing the sum of $44.80, that did not belong to him, and, even if it were necessary to have recourse to the intrinsic value of the paper upon which the check was written as a basis of this prosecution, its value is by no means the measure of his guilt. In many cases of a seemingly trivial nature, the evidence may disclose a criminal intent and purpose, demanding the severest penalty authorized by the law for such offenses. In other cases, appearing by the indictment to be of a much more serious nature, there may be such at-

[1] Comp. St. § 10213.

tending circumstances as would go far in extenuation of guilty purpose on the part of the offender. In all cases it is not only the right, but the duty, of the court to take into consideration all the facts and circumstances surrounding each criminal transaction, in order to determine the degree of the guilt of the accused, and the punishment that should be inflicted.

It is for this reason that the criminal statutes fix the minimum and maximum punishment for specific crimes and offenses, and leave to the discretion of the court, subject to these limitations, the sentence to be imposed. In this particular case the fixing of a penalty upon the sole consideration of the intrinsic value of the paper upon which this check was written would practically be a miscarriage of justice. But this conviction is not necessarily predicated upon the intrinsic value of the paper upon which the check is written. Section 47 of the Penal Code, under which the first count of the indictment is framed, is far wider in its scope than either section 46 of the Penal Code or the common-law crime of larceny. This section makes it unlawful to steal or purloin, not only the personal goods or property, but also includes within its terms records, vouchers, or valuable thing whatever.

This check is signed by the postmaster and countersigned by the assistant postmaster. It not only authorized the bank to pay, out of the funds of the United States on deposit in that bank, the amount named therein to the mail carrier in whose favor it was drawn, but in effect certified the amount due him from the United States for his services. It is not substantially different from a separate pay voucher, signed and attested by the postmaster and assistant postmaster, that might be presented by the mail carrier at the window of the post office cashier for payment. To all intents and purposes it is a "voucher," within the meaning and intent of section 47, of the Penal Code.

Not only is it a voucher, but it is in fact, and was no doubt intended to be, a record of payment by the United States to this mail carrier of the amount due him. In the ordinary course of business, it evidenced that payment as fully as any other record could evidence it. It was all-sufficient as a record of payment, without the receipted pay roll. That it had not yet been delivered to the payee, or canceled and returned to the bank, cannot change its character in that respect, if in fact it was intended, at the time it was written to serve the dual purpose of voucher and record of payment.

The charge of the court in reference to the nature of this paper, whether voucher or record, or both, is not before this court, and, if it were, no exceptions were taken to the charge. The indictment designates this paper as a "voucher or pay check," but without prejudice to the defendant this may be treated as mere surplusage, in view of the fact that the indictment fully describes the paper that he is charged with stealing or purloining from the United States, if the paper so described in detail comes within the meaning of any other term or designation used in the statute defining the offense.

[2] It is further contended on the part of the plaintiff in error that

the check, when taken by him, was not in the possession of the United States, but had already passed into the possession of the payee named therein. The facts in relation to this question are not in dispute. November 16, 1918, was the regular semimonthly pay day of the postal employés in the Chattanooga postoffice. These payments were all made by checks drawn against government funds in the Hamilton National Bank of Chattanooga. For many years it had been the custom of the postmaster and assistant postmaster to place these checks in a book containing the name and amount due to each employé in a room in the postoffice, and upon a table near to the desk of the superintendent in charge of these employés. These checks remained in the actual custody and possession of the superintendent, and completely under his control, until an employé entered the room, signed the payroll, and took possession of his own check.

On this particular day these checks were placed on the table in the superintendent's room, about 2 o'clock in the afternoon. The plaintiff in error, Clark, who was also an employé, came in, receipted for his own check, and received the same. When Fears applied for his check, about 5 o'clock in the evening, it could not be found among the other checks. There is evidence in this record that this was presented by Clark to the bank of D. B. Loveman & Co., and that he, in the presence of the paying teller, indorsed the name "A. N. Fears" upon it, and received from her full payment of the amount written therein. There is also further evidence tending to establish that this signature is a forgery, and that it is in the handwriting of Clark.

It is claimed that the placing of these checks upon the table near the desk of the superintendent of employés, and under his immediate supervision and control, constituted a delivery to each employé of his own particular check. This contention overlooks the evidence of the assistant postmaster that:

"No employé was allowed to take his own check without signing the pay roll, receipting therefor."

It is apparent from this and other testimony that the postmaster had not parted with the possession of these checks, that they were still in his possession and under his control and that he had a right to remove any one or all of them from this table for any reason, or for no reason whatever. The fact that each employé was required to sign this pay roll before he could receive his check was a condition precedent to the delivery of the same to him. There could be no constructive delivery until this condition had been complied with.

Delivery is defined in Bouvier's Law Dictionary, as—

"Transmitting the possession of a thing from one person into the power or possession of another."

There is little chance to quarrel with this definition. Applying this definition to this case, it is clear that this check had not passed into the power or possession of A. N. Fears, in whose favor it was written, but still remained in the possession of the postmaster, who not only had the power, but the right, to take it from this table and destroy it

at will, or, if he chose, issue another one for an entirely different amount, if perchance any error had occurred in determining the correct amount due the carrier, or the check or voucher had inadvertently been written for the wrong amount.

Judgment affirmed.