**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond HUGHES, Defendant-Appellant.**

**No. 76–1673.**

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1976.

Richard H. Gill, Montgomery, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., Robert C. Watson, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before RIVES, GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

At approximately 1:45 a. m. on August 16, 1975, Raymond Hughes, a civilian,

was stopped by Military Policemen at Fort Rucker, Alabama[1] on suspicion of driving while intoxicated (DWI). Hughes was convicted of the DWI charge under the Assimilative Crimes Act[2] by a United States magistrate and sentenced to 30 days in jail and a $100 fine. The conviction was affirmed on appeal to the district court and Hughes timely filed notice of appeal from that judgment.[3] After oral argument and a careful review of the record and briefs, we find no reversible error and affirm the judgment of the court below.

The major portion of Hughes' appeal deals with the introduction into evidence of the results of an alcohol-breath test[4] given the appellant at the Daleville, Alabama police station. It is Hughes' contention that the strict requirements of the Alabama Implied Consent statute, Ala.Code tit. 36, § 154 (1973 Supp.), were not complied with, thus making the test results inadmissible. Hughes then cites Alabama case law standing for the proposition that erroneous ad-

mission of illegal P.E.I. test results is "highly prejudicial" and constitutes reversible error. *Patton v. City of Decatur*, Ala., 337 So.2d 321 (1976).[5]

On the initial appeal of this case, the district judge found "that the guilt of the defendant was established beyond any reasonable doubt, without regard to the P.E.I. test."[6] In this second appellate consideration of the case, we use the same standard as the district court, which is whether the magistrate's findings when viewed in a light most favorable to the Government were clearly erroneous.[7] Moreover, unlike *Patton*, "we note that this was a bench trial; the prejudicial impact of erroneously admitted evidence is thus presumed to be substantially less than it might have been in a trial before a jury." *United States v. Nicholson*, 492 F.2d 124 (5th Cir. 1974). It is further presumed that the trier of fact in the instant case "relied only upon properly admitted and relevant evidence." *United States v. Dillon*, 436 F.2d 1093, 1095

---

1. Hughes argues that his conviction under the Assimilative Crimes Act, 18 U.S.C. § 13 (1970), cannot be sustained on the basis of a record that does not affirmatively show that the offense occurred on territory under federal jurisdiction. We conclude, however, that the offense did occur on Fort Rucker and that this contention is without merit. The record is replete with evidence of exactly where on Fort Rucker the offense occurred and the district court could have taken judicial notice of the fact that certain named streets and intersections are located on the federal enclave. *See* Rule 201, Federal Rules of Evidence. Moreover, the arresting officer testified that after Hughes was stopped, they "left Ft. Rucker at 1:45 a. m." en route to the Daleville Police station. Record on Appeal, vol. II, p. 30. It is interesting to note that this objection to federal jurisdiction was not made at trial, where the arresting officer was asked detailed questions by Hughes' counsel about the area in which the offenses occurred. Record on Appeal, vol. II, pp. 16–20.

2. 18 U.S.C. § 13 (1970). The substantive offense charged under the federal statute was Ala.Code tit. 36, § 2 (1958).

3. This court has jurisdiction of the appeal under 28 U.S.C. § 1291 (1970), which provides for "appeals from all final decisions of the district courts . . .." *See* 8B J. Moore, Federal Practice, § 8.01 at App–68.

4. The test used by the Daleville Police at the request of the military authorities is known as a photo-electric intoximeter, or P.E.I. test. Hughes' test showed a reading of 0.12 percent of alcohol by weight in his blood. Under Ala. Code tit. 36, § 155(a)(3) (1973 Supp.), a reading of 0.10 percent or more gives rise to a rebuttable presumption that the person was under the influence of intoxicating liquor.

5. In *Patton* the Alabama Supreme Court reversed a jury trial conviction for driving while intoxicated because a certified copy of the standards for P.E.I. tests promulgated by the State Department of Public Health was not introduced into evidence. The reversal was ordered in spite of the fact that the officer administering the test had been trained by the Department of Public Health, and in spite of the officer's testimony that he followed the prescribed procedures set out on a check-list-type P.E.I. operator's instruction card.

6. Record on Appeal, vol. I, p. 4.

7. *United States v. Harris,* 381 F.Supp. 1095 (E.D.Pa.1974); *Taylor v. United States,* 358 F.Supp. 384 (S.D.Fla.1973). In reviewing the findings of a magistrate, "the scope of appeal shall be the same as on an appeal from a judgment of a district court to a court of appeals." Rule 8(d), Fed.Rules of Proc. for the trial of Minor Offenses Before U.S. Magistrates.

(5th Cir. 1971). Therefore, the question before this court is whether the magistrate clearly erred in finding Hughes guilty on the basis of all the evidence admitted at trial except the P.E.I. test.

■ The record shows that Hughes was stopped by the Military Police after they noticed his car weave across the centerline of the highway three times. Hughes stumbled when getting out of the car and the arresting officer detected the odor of alcohol on his breath. When asked to walk a straight line, Hughes stumbled and was unable to perform a balancing test in which he was asked to stand with his heels together, lean backwards, extend his arms outward and then touch his nose with his index finger. Following these occurrences, Hughes was taken to the Daleville police station where the P.E.I. breath test was given.

The defense attempted to refute the Government's case with the testimony of two persons who had been with Hughes at the Colonial Lounge in Daleville, Alabama shortly before he was stopped by the Military Police. One witness testified that Hughes did not stagger when he left the Lounge and the other testified that there was nothing about his appearance that would lead him to believe that Hughes was intoxicated. Both men testified that the appellant drank a beer, but it is unclear from the record whether the two men were talking about the same beer. The defense also points out that Officer Ramsey, who administered the P.E.I. test, said that Hughes did not stagger when he walked. On the basis of these facts, it is the opinion of this court that even in the absence of the P.E.I. results, the evidence of Hughes' intoxication was sufficient to prove his guilt beyond a reasonable doubt. The admission of the breath test evidence, therefore, must be considered harmless error, even if it was error.

■ In the alternative, Hughes asks this court to revise his sentence, and revoke or suspend his 30-day jail term. The sentence imposed below is within the statutory limits [8] and we find no hint of an abuse of discretion or of judicial misconduct that would allow this court to intervene. *United States v. Deaton,* 477 F.2d 65 (5th Cir.), *cert. denied,* 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76 (1973); *United States v. Bristol,* 473 F.2d 439 (5th Cir. 1973). While we express no opinion on the outcome of a post-affirmance motion for reduction of Hughes' sentence under Rule 35 of the Federal Rules of Criminal Procedure, we remind the appellant that "considerations based on compassion and mercy are to be determined by the trial court." *Lott v. United States,* 309 F.2d 115, 126 (5th Cir. 1962). We are fully confident that the experienced trial judge who sentenced this appellant will give proper and careful consideration to a motion filed pursuant to Rule 35 Fed.R.Cr.P.

Appellant's final contention is that the magistrate abused her discretion in not granting a continuance of the trial. We find no merit in this contention.

The judgment is AFFIRMED.

---

**8.** Under Ala.Code tit. 36, § 2 (1958) a person convicted of driving while intoxicated can be sentenced to a jail term not exceeding one year, or a fine of $100 to $1,000, or both. Additionally, the trial court can revoke the person's driver's license for up to one year. Upon a second or subsequent conviction, the statute provides for imprisonment at hard labor for not more than a year, or a fine of $100 to $1,000, or both.

Furthermore, conviction on a second DWI charge carries with it a mandatory suspension of driving privileges for at least 30 days and up to one year. Evidence presented to the district court showed that Hughes had twice been arrested previously for driving while intoxicated. In one case he forfeited a bond and in the second he was found guilty of reckless driving.