**UNITED STATES of America,
Appellant,**

v.

**Joseph FORCELLATI,
Defendant-Appellee.**

**No. 79–1225.**

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1979.

Decided Dec. 6, 1979.

Joan C. Stanley, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., and Robert B. Collings, First Asst. U. S. Atty., Boston, Mass., were on brief, for appellant.

Jeffrey M. Smith, Boston, Mass., by appointment of the Court, for appellee.

Before KUNZIG,* Judge, U.S. Court of Claims, BOWNES, Circuit Judge, DOOLING,** Senior District Judge.

DOOLING, District Judge.

The United States has appealed to this court under 18 U.S.C. § 3731 from a judgment of the district court which reversed appellee's conviction, at a non-jury trial before a magistrate, of the misdemeanor, 18 U.S.C. § 641, of conveying and disposing of property of the United States, that is, a Treasury check payable to a third person. Appellee challenges the right of the United States to appeal, contending, first, that there is no statutory authorization for an appeal from the decision of a district court reviewing a decision of a magistrate rendered after a non-jury trial of a misdemeanor, and, second, that the judgment of the district court was a judgment of acquittal, appeal from which is barred by the double jeopardy clause of the fifth amendment. If the appeal does lie, the government contends on the merits that the district court erred in acquitting appellee.

The information charged that on or about May 3, 1976, at Cambridge, Massachusetts, appellee "wilfully, knowingly and without authority did convey and dispose of the property of the United States, to wit, a United States Treasury check . . . payable to Richard Foote, a thing of value, all in violation of 18 U.S.C. § 641." Appellee waived in writing his right to a jury trial and to trial before a district judge and consented to trial by the magistrate without a jury. 18 U.S.C. § 3401(b); Rule 2(b)(c), Rules of Procedure for the Trial of Minor Offenses before United States Magistrates.

After a brief trial the magistrate found as facts: that the government check described in the information was a United States Treasury check which had never been delivered to its intended payee, Richard Foote; that at the request of defendant a friend cashed the check at her bank and gave the entire proceeds to defendant; and that the defendant knew when he asked the friend to cash the check that it was a check issued by the United States and that it was stolen. The magistrate ruled as a matter of law that the check was the property of the United States because it had not been delivered to the payee. On this basis he found the defendant guilty, imposed a sentence of three months, and stayed execution of the sentence pending appeal.

On the appeal to the district court judge appellee argued, as he had argued to the magistrate, that as a matter of law the check was not the property of the United States. Saying that the general rule was that delivery of a negotiable instrument was completed when the instrument was mailed if mailing was the customary mode of delivery contemplated by the parties, Judge Skinner ruled that the check in question was not the property of the United States at the time it came into the defendant's possession. He rejected the government's argument that the government's allegedly special relationship to the Postal Service and its greater access to means of withdrawing its letters from the mail changed the normal rule that mailing a check effected delivery to the payee. He concluded his decision:

* Sitting by designation.

** Of the Eastern District of New York, sitting by designation.

The judgment of conviction is RE-VERSED, a judgment of acquittal is to be entered, and the defendant discharged without day unless there be other process pending against him.

Judge Skinner stayed for thirty days so much of his order as discharged the appellee. Within the thirty day period the United States filed its notice of appeal "pursuant to Title 18, United States Code, Section 3731," and its motion to stay the judgment of reversal pending appeal was allowed on May 30, 1979.

Under Section 641, if the value of the "thing of value of the United States" allegedly disposed of by the defendant does not exceed $100, the offense is a misdemeanor, and, hence, a "minor offense," within the meaning of 18 U.S.C. § 3401(f), which could be tried before the United States magistrate. 18 U.S.C. § 3401(a)(b). Section 3402 provides that in all cases of conviction by a United States magistrate "an appeal of right shall lie from the judgment of the magistrate to a judge of the district court of the district in which the offense was committed." The Rules of Procedure for the Trial of Minor Offenses before United States Magistrates provide in Rule 8(d) that the defendant shall not be entitled to a trial de novo by the judge of the district court, but that the scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals. Like Rule 4(b) of the Federal Rules of Appellate Procedure, dealing with appeals in criminal cases, Section 3402 and Rule 8(a) do not contemplate appeals by the government, nor specifically mention any further appeal beyond the first appeal to the district court.

■ While there is thus no express provision for even the defendant to appeal from a judgment of the district court affirming a magistrate's conviction, such appeals have been allowed apparently as a matter of course. See, e. g., United States v. Kabat, 586 F.2d 325 (4th Cir. 1978); United States' v. Peck, 545 F.2d 962 (5th Cir. 1977); United States v. Hughes, 542 F.2d 246 (5th Cir. 1976); United States v. Chew, 540 F.2d 759 (4th Cir. 1976), cert. denied, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977); United States v. Margraf, 483 F.2d 708 (3d Cir.), vacated on other grounds sub nom. Margraf v. United States, 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1973); United States v. Miller, 468 F.2d 1041 (4th Cir. 1972), cert. denied, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973); cf. Hooper v. Remmel, 165 F. 336, 338 (8th Cir. 1908). The cases which have adverted to the question of appellate jurisdiction have referred it to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction of appeals from all final decisions of the district courts. See Kendall v. Davis, 569 F.2d 1330, 1331 (5th Cir. 1978); United States v. Hughes, supra, 542 F.2d at 248 n. 3; United States v. Margraf, supra, 483 F.2d at 709. The statutory grant to the courts of appeals of jurisdiction to review "all final decisions" of district courts is literally sufficient to include final decisions reviewing criminal convictions before magistrates, and no reason for excluding them from its embrace appears. Indeed, the assurance of that further review in the courts of appeals encourages use of magistrates' trials for minor offenses.

■ However, deciding that the courts of appeals have jurisdiction to review final decisions of district courts on review of convictions before magistrates does not imply that the United States can appeal a decision of a district court reversing a conviction before a magistrate. The right of the United States to appeal final decisions in criminal cases is measured in full by the first paragraph of 18 U.S.C. § 3731:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one of more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Apparently only one other reported case has considered the precise question whether Section 3731 permits the government to

appeal to the court of appeals from a judgment of a district court directing acquittal of a defendant convicted before a magistrate. *United States v. Moore,* 586 F.2d 1029 (4th Cir. 1978), held that Section 3731 does authorize such an appeal—subject necessarily to the limitations imposed by the double jeopardy clause—even though the conviction followed upon a violation notice and was not based on an "indictment or information," as the statute, read literally, would appear to require. The judgment appealed from here also took the form of a judgment of "acquittal"; it was not framed in the language of Section 3731 as a judgment "dismissing" the information. The Supreme Court has decided in *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), however, that Section 3731 authorizes appeals from a district court that take the form of acquittals as well as from a "dismissal." *Id.* at 567 n. 4 and 568, 97 S.Ct. 1349.

 Appellee argues that because he was acquitted in a final judgment of the district court, the double jeopardy clause of the fifth amendment bars the government's appeal. The contention must be rejected. *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), held that the government's appeal was not barred by the double jeopardy clause in a case in which, after a jury had rendered a verdict of guilty, the trial court granted a motion to dismiss the indictment for preindictment delay. The Supreme Court said:

> In various situations where appellate review would not subject the defendant to a second trial this Court has held that an order favoring the defendant could constitutionally be appealed by the Government.

*Id.* at 344, 95 S.Ct. at 1022. If, however, a jury fails to reach a verdict, and the trial court then, on its review of the evidence, concludes that a judgment of acquittal is warranted because the government's evidence is insufficient, the government has no appeal: the only relief that the government could obtain by appeal would be an order setting the acquittal aside and directing a new trial, and that would put the defendant in double jeopardy. *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 570, 97 S.Ct. 1349. Where, however, an intermediate appellate court reverses a conviction and orders the indictment dismissed and the defendant discharged, the government is not barred from a further appeal seeking a reversal and a reinstatement of the conviction in the trial court. The final appellate court has two courses open to it in such cases: it may reverse and reinstate the conviction in the trial court or it may affirm. However, it may not reverse and order a new trial. *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978), put it in these terms:

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. (Footnote omitted.)

*See generally The Supreme Court, 1977 Term,* 92 Harv.L.Rev. 57, 109, 113–114, 117 (1978). *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), is to the same effect.[1]

Since the decision in the *Wilson* case, *supra,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 214, the courts of appeals have not hesitated to entertain appeals from judgments of acquittal entered on defense motions after jury verdicts of guilty. *United States v. Schoenhut,* 576 F.2d 1010 (3rd Cir. 1978); *United States v. Burroughs,* 564 F.2d 1111 (4th Cir. 1977); *United States v. Ra-*

---

1. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), overruling *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), held that, where a defendant at the close of the government's case obtained a judgment dismissing one count of an indictment on the ground of preindictment delay, the government could on its appeal obtain a direction for a new trial since it was the defendant himself who sought to have the trial terminated without submitting the issue of guilt to the court or to the jury; that successful effort does not bar the government's right to appeal under 18 U.S.C. § 3731.

*mos,* 558 F.2d 545 (9th Cir. 1977); *United States v. De Garces,* 518 F.2d 1156 (2d Cir. 1975); *cf. United States v. Moore, supra,* 586 F.2d 1029 (appeal from district court's reversal of magistrate's finding of guilt).

■ Appellee is mistaken in arguing from *Burks, supra,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, that Judge Skinner's finding that the government's evidence was insufficient affords him a double jeopardy protection against reversal and reinstatement of the magistrate's judgment of conviction. The government does not here seek, as it did in *Burks,* "another opportunity to supply evidence which it failed to muster in the first proceeding," *id.* at 11, 98 S.Ct. at 2147. The government here contends that it did prove its case and that the conviction was correct, but that Judge Skinner committed an error of law in ruling that the government's evidence was insufficient because, as a matter of law, mailing the check divested the government of its property interest in the check. The government asks this court to correct that error and reinstate the conviction. No new trial is sought. What is sought is a decision that the magistrate's judgment should stand.

It must, therefore, be concluded that we have jurisdiction of the present appeal by the government under 28 U.S.C. § 1291 and 18 U.S.C. § 3731, and that the double jeopardy clause of the fifth amendment does not bar the government's prosecution of the appeal.

■ Conceding that it was essential for the government to prove at the trial that the government had a property interest in the check when it came to appellee's hands the government contends that the district court erred in holding that because, generally, checks are "delivered" to and become the property of the payee when mailed, the government did not have any property interest in the check after it mailed it to the payee Foote.[2]

The parties agree that conviction under 18 U.S.C. § 641 requires proof that a property interest of the United States was invaded. *See United States v. Alessio,* 439 F.2d 803, 804 (1st Cir. 1971). Convictions under Section 641 for misdealing with checks issued by the government rest explicitly or implicitly on the government's possessing a sufficient property interest in a check after its mailing to the payee to support a charge under Section 641. *See United States v. Lee,* 454 F.2d 192 (9th Cir. 1972); *United States v. Miller,* 520 F.2d 1208, 1210 (9th Cir. 1975); *cf. United States v. Maxwell,* 588 F.2d 568, 573 (7th Cir. 1978); *United States v. Pavloski,* 574 F.2d 933, 935 (7th Cir. 1978); *United States v. Morris,* 541 F.2d 153, 155 (6th Cir. 1973); *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972); *United States v. Lambert,* 446 F.Supp. 890, 892–95 (D.Conn.1978). In *Collins, supra,* a conviction under § 641 was reversed where it appeared that the instrument used to withdraw funds from a bank in which federal funds had been deposited was a warrant of the city rather than a check of the United States. The majority opinion explained:

> The usual check theft case involves three parties: the drawer, the thief, and the person who accepts the forged check. When the drawer is the Government, it is the Government's piece of paper and the thief has stolen the property of the Government and of the person he has convinced to make payment. (*See Clark v. United States* (6th Cir. 1920) 268 F. 329.)

464 F.2d at 1165. In *Collins* the "piece of paper" defendant stole was a warrant signed by the city and issued to defendant's employer. *Collins* is, thus, some authority for the proposition that the receipt of a check or warrant by a third person does not end the issuer's property interest in the instrument.

---

2. The government contends that the check remained its property in any event because the Postal Service is an agent of the Treasury, so that delivery to the Postal Service by the Treasury does not constitute a delivery to the payee. The latter argument, depending largely on the interpretation of Sections 153.51 and 154.14 of the Postal Service Manual as incorporated by reference in 39 C.F.R. § 111.1, was not urged in the court below nor before the magistrate. The disposition of the ownership point makes it unnecessary to discuss this point.

*Clark v. United States,* 268 F. 329 (6th Cir. 1920), cited by the court in *Collins* and distinguished by Judge Skinner in the present case, does not support appellee's argument. *Clark* dealt with the theft from a paymaster of a paycheck fully prepared by the United States and ready for delivery but which was not to be delivered until the payee-employee signed the payroll. The defendant challenged his conviction on the ground, *inter alia,* that the check was valueless while it remained in the hands of the drawer. The court disagreed, pointing out that even blank checks may be the subject of larceny, and that a fully prepared check was no less valuable; moreover, the small intrinsic value of a check did not signify that the theft of such a check was a trivial offense. The court said:

> This defendant, if he stole the check, was not stealing it for the value of the paper upon which it was written. He was stealing it for the purpose of unlawfully securing the sum of $44.80 that did not belong to him, and, even if it were necessary to have recourse to the intrinsic value of the paper upon which the check was written as a basis of this prosecution, its value is by no means the measure of his guilt.

268 F. at 331. As the court added, a government check is a record of payment of the United States and a voucher, within the meaning of Section 641. The interest of the United States in the check as a document and for its ultimate documentary uses, then, continues, and that interest is a property interest not dependent on possession.

■ When a check is issued and mailed to the payee it is not analogous either to the mailed acceptance of a mailed offer to contract or to the appropriation of specific goods to a contract of sale by shipment.[3] A check significantly remains the check of the drawer, for that is what gives it its value in the hands of the payee or in the hands of any third party who gets it and forges the payee's name on the back well enough to negotiate the check. The written instrument, moreover, is intended to be returned to the drawer as evidence of the drawer's payment of the face amount of the check to the payee. It is issued for an instrumental purpose, and it is retained upon its return as a receipt. For these instrumental and record-keeping purposes the check as a piece of paper never genuinely ceases to be the property of the issuer.

■ The delivery of a check is at best of limited functional significance. In the absence of special agreement a check is but a conditional payment even when it has been delivered to the payee. *United States v. Johnston,* 133 F.Supp. 633, 635 (D.Minn. 1955); *Steele v. Vanderslice,* 90 Ariz. 277, 367 P.2d 636, 639 (1961); *Stream v. CBK Agronomics, Inc.,* 79 Misc.2d 607, 361 N.Y. S.2d 110 (N.Y.Co.1974), *modified on other grounds,* 48 A.D.2d 637, 368 N.Y.S.2d 20 (1st Dept. 1975). Here, the mailing of the check by the government did not discharge its obligation to the payee Foote; it remained indebted to Foote for the face amount of the check. The diversion of the check to the hands of appellee enabled him to convey and dispose of the check to the government's damage: the cashing of the check at a bank and its presentation to the government for payment through banking channels ordinarily deprives the government of funds until it can pursue the bank endorsers for an amount equal to the face value of the check. The risk of loss in the mail was on the government and not on the payee,

---

3. For certain purposes, mailing a check to the payee in accordance with the practice between the parties may be a delivery to the payee. Mailing may be a "delivery" fixing the place of the making of a negotiable instrument for choice of law purposes, *In re Lucas' Estate,* 272 Mich. 1, 261 N.W. 117 (1925); *Barrett v. Dodge,* 16 R.I. 740, 19 A. 530 (1890). Mailing may fix the time when an endorsed note has its inception when one of the endorsers has died and the issue is whether he died before or after the note was "delivered" by his agent, *Trego v. Cunningham's Estate,* 267 Ill. 367, 108 N.E. 350 (1915). And mailing may even establish date of payment as between a general contractor and a lienor seeking to assert a claim to the amount represented by the payment, *People v. Continental Casualty Co.,* 157 Misc. 15, 282 N.Y.S. 202 (Albany Co. 1935).

for the government was exposed to double payment through the loss of the check and its instrumental use by one to whom it was not intended to be delivered. Risk of loss does not necessarily locate title, but the fact that the risk of loss of the paper itself is borne by the government and is initially measured in terms of the face amount of the check signifies that the issuance and delivery of the check do not genuinely convey any title to the paper itself. The paper is intended to be returned to the government by the payee and is valueless to the payee or any other holder except as it is, through banking channels, presented for payment by physically returning it to the government. It is not like a title deed or other muniment of title that is delivered to a transferee for his keeping; rather, it is the government's physical symbol of its payment of an amount of money; it does not stop being a government check at any time. *See United States v. Edwards,* 473 F.Supp. 81, 83 (D.Mass.1979).

The judgment of the district court is reversed and the judgment of conviction entered on the magistrate's decision is reinstated.