UNITED STATES of America, Appellee,

v.

Delbert O'KELLEY, a/k/a Fred,
Appellant.

No. 82–2367.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 17, 1983.

Decided March 11, 1983.

Rehearing Denied April 4, 1983.

---

Evans & Dixon, Erich V. Vieth, St. Louis, Mo., for defendant.

Thomas E. Dittmeier, U.S. Atty., Mitchell F. Stevens, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

PER CURIAM.

Delbert O'Kelley was found guilty of violating 18 U.S.C. § 641 (1976), because he had retained with the intent to convert to his own use a "thing of value of the United States" with the knowledge that such was "embezzled, stolen, purloined or converted." O'Kelley filed a motion for judgment of acquittal both before and after the jury verdict. The district court denied the motion and entered judgment against O'Kelley on November 5, 1982. It sentenced him to

five years, but suspended the sentence and placed him on probation. O'Kelley appeals the judgment of the district court. We affirm.

The controlling facts underlying his conviction are not in dispute. For some time, O'Kelley lived in a house in the St. Louis area with Zenola Grant. Grant's son, Carl, also lived at the residence. Carl received periodic United States Treasury checks under the federal Social Security program. Carl received a United States Treasury check for $242.00 on August 3, 1982. It was left unendorsed in the living room.

On August 6, 1982, O'Kelley took the check from the living room, still unendorsed, and sold it for $73.00 to law enforcement officers conducting a "sting" operation in St. Louis. Zenola Grant testified that Carl had earlier given the unendorsed check to her in exchange for $130.00 cash, the balance considered as rent, and that O'Kelley had her permission to take the check. O'Kelley agreed and further testified that he left $36.00 of the $73.00 at the house. The jury apparently discredited their testimony, however, since, assuming their version of the facts, Zenola could have simply asked Carl to endorse the check and given it to O'Kelley to cash for full face value. The jury found that O'Kelley's acts violated 18 U.S.C. § 641 (1976). In his motion for a judgment of acquittal and before this Court, O'Kelley argues that the facts cannot support a conviction under this provision because the check which he sold to the "sting" agents was not a "thing of value of the United States" once received and transferred by the named payee, Carl Grant. We disagree.

The district court, in denying O'Kelley's motion for a judgment of acquittal, was unable to find any precedent directly on point. We have had the same difficulty. There are, however, cases that are helpful. In *United States v. Forcellati,* 610 F.2d 25, 31 (1st Cir.1979), *cert. denied,* 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980), the First Circuit held that stealing a United States Treasury check prior to its receipt by the named payee violated 18 U.S.C. § 641 (1976). In addition, some courts have stated in dicta that a United States Treasury

check remains a "thing of value of the United States," for the purposes of section 641, regardless of whether possession has passed to the payee or not. *E.g., United States v. Forcellati, supra,* at 31; *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir.1972). *But cf. United States v. Fleetwood,* 489 F.Supp. 129, 133 (D.Ore.1980) (United States Savings Bonds and Freedom Share Notes no longer property of the United States once transferred to private parties).

Although the cases sustaining section 641 convictions based on the stealing of government paper prior to receipt by an intended payee do not directly address the issue raised here, we agree with the district court that their reasoning should be extended to the facts of the instant case. The government delivered the United States Treasury check at issue to Carl Grant with the intent that he would endorse it, and that the government would eventually accept presentation of the check and pay it out of federal funds. O'Kelley stole the check before the process of orderly negotiation of it as a medium of exchange, with proper endorsement, ever began. Under these circumstances, we hold that the unendorsed check continued to be a "thing of value of the United States" even after receipt of the check by Carl Grant. Therefore, we affirm the judgment of the district court.