**UNITED STATES of America, Appellee,**

v.

**Juan Carlos TORRES SANTIAGO, Defendant, Appellant.**

No. 83–1591.

United States Court of Appeals, First Circuit.

Argued Feb. 8, 1984.

Decided March 8, 1984.

---

Pedro A. Otero Fernandez, Rio Piedras, P.R., for defendant, appellant.

Jorge E. Vega-Pacheco, Asst. U.S. Atty., Hato Rey, P.R., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Appellant was convicted under a two-count indictment charging him with knowingly receiving, concealing, and retaining stolen property of the United States in violation of 18 U.S.C. § 641.[1] The property consisted of two United States Treasury checks, each for $149.30, drawn to Carmen Ramos in payment of her Social Security benefits. Appellant was sentenced to two three-year prison terms to be served concurrently. He now challenges both the sufficiency of the evidence and the severity of the sentence.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant argues that the district court erred in denying his motion for judgment of acquittal. The motion was first made during the course of his two-day bench trial. It was renewed eight days after the court made its finding of guilt. The court rejected appellant's motion to renew his motion for judgment of acquittal both on the merits and for tardiness, citing Rules 29 and 45 of the Federal Rules of Criminal Procedure.[2]

Because the government's evidence was plainly sufficient to support the judgment of conviction we need not reach the question whether appellant waived his sufficiency claim by filing his motion to renew one day outside Rule 29(c)'s seven-day filing limit.[3]

■ Appellant argues that there was no evidence "that he either took the check[s] ... or that he knew someone had stolen them...." On this he is clearly mistaken; the government's case was powerful on both points. There was evidence that on May 1, 1981 Carmen Ramos received two Social Security checks drawn on the United States Treasury. On May 4 she endorsed the checks and gave them to her husband, who testified that he deposited them into their joint account at the Santa Rosa branch of Banco Popular. The deposit slip, stamped by the teller, was submitted into evidence. A bank auditor testified that in

---

* Of the Fifth Circuit, sitting by designation.

1. Section 641 provides, in essence, that, "[w]hoever receives, conceals or retains" any "thing of value of the United States ... with the intent to convert it to his ... use or gain, knowing it to have been embezzled, stolen, purloined or converted" shall be guilty of a felony; "but if the value of such property does not exceed the sum of $100," he shall be guilty of a misdemeanor.

2. Fed.R.Crim.P. 29(c) provides that "a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged...." Fed.R.Crim.P. 45(b) states that "the court may not extend the time for taking any action under Rules 29, 33, 34 and 35 except to the extent and under the conditions stated in them."

3. Avoiding the waiver issue seems even more appropriate because it was not briefed at all by appellant and the cases which the government wishes us to follow, purporting to view similar defaults as a bar to appellate review, went on to consider the sufficiency of the evidence under "plain error" or "manifest injustice" standards. *See United States v. Rone,* 598 F.2d 564, 572–73 (9th Cir.1979) ("The evidence is sufficient; no plain error is present."), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Phipps,* 543 F.2d 576, 577 (5th Cir. 1976) ("The evidence in the instant case supports the jury verdict and does not result in manifest injustice," assuming *arguendo* that such an exception to the waiver doctrine exists), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 564 (1977).

the ordinary course of business this deposit would have been sent on the day of deposit to the bank's proof department where the deposit slip and the deposited items would be cross-checked before posting to the customer's account. Appellant was at that time an employee of the proof department. On May 5, 1981, according to Ferdinand Rolon Martinez (Rolon), another bank employee, appellant was in possession of these two checks. Rolon testified that on that day appellant gave him the checks with instructions to cash them at the Barceloneta branch of Banco Popular. On May 6 he took them to that branch as instructed, gave them to a teller, Jose Raphael Gandara Nieves (Gandara), and received cash in return. The cash, Rolon testified, was then split between appellant, Gandara, and himself. Gandara's testimony substantially corroborated Rolon's. He added, moreover, that appellant had first approached him in March 1981, to enlist him in a scheme whereby appellant and others would steal Social Security checks from bank deposits and give them to other bank employees to cash. Gandara testified that he had cashed eleven such checks, including the two deposited into Ramos's account. The court was entitled to believe Rolon and Gandara and to disbelieve appellant's version.

■ Appellant argues that even if all of this were believed, it does not show that he took anything that belonged to the United States or that the United States was in any way prejudiced. The statute, however, does not require a showing that the United States was prejudiced. It merely requires the government to show that a "thing of value of the United States" has been knowingly received, concealed or retained by the accused with improper intent, and, to support a felony conviction, that that property have a "value" in excess of $100. 18 U.S.C. § 641. In *United States v. Forcellati*, 610 F.2d 25, 30–32 (1st Cir.1979), we held that the United States retained a sufficient property interest in a United States Treasury check to sustain a conviction on an information under section 641. While the check there was undelivered, our ra-

tionale clearly indicated that the instrument would be a "thing of value to the United States" even after delivery—indeed, indefinitely. *Accord United States v. O'Kelly*, 701 F.2d 758 (8th Cir.1983).

It follows that the present checks were things of value of the United States within section 641. Since *Forcellati* involved a misdemeanor, no issue was presented of evaluating the check for purposes of the third paragraph of section 641, which provides that one guilty of the proscribed conduct commits a felony unless "the value of such property does not exceed the sum of $100." Section 641 goes on to define the term "value" to mean "face, par, or market, or cost price, either wholesale or retail, whichever is greater." The checks here each had a face value of $149.30. This was the value which enticed appellant and his confederates to purloin the checks; this was their functional value for purposes of the fraudulent scheme. That the United States might not have been liable for the loss caused by the theft and resulting fraud is immaterial. *See Clark v. United States*, 268 F. 329, 331 (6th Cir.1920), *cited in Forcellati*, 610 F.2d at 31. We are satisfied that for purposes of making the crimes a felony rather than a misdemeanor, the value of the checks exceeded $100. *United States v. Lee*, 454 F.2d 190, 192 (9th Cir.1972).

## II.  SENTENCE DISPARITY

■ Appellant argues that the district court showed vindictiveness in sentencing him to three year's imprisonment on each count to be served concurrently, while his cohorts were either not tried (Rolon and Gandara) or given a suspended sentence (Sotomayer). He suggests that the court's alleged vindictiveness was motivated by his decision to take his case to trial, and that it therefore violated his right to due process of law.

We rejected a similar argument in *United States v. Quejada-Zurique*, 708 F.2d 857, 861 (1st Cir.1983). We said, "The short answer to this contention is that the

sentences, all of which were within statutory limits, were imposed by two different judges, each with discretion to choose the sentence he deemed appropriate." As in *Quejada-Zurique,* appellant and Sotomayer came before different judges and appellant's sentence was well within statutory limits. We also stated in *Quejada-Zurique,*

> The defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence than he would have received by pleading guilty. "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973).

708 F.2d at 861–62.

*Affirmed.*