**UNITED STATES**

v.

**Phillip W. NEWSOME, 590 24 0889, Electrician's Mate Second Class (E–5), U.S. Navy.**

**NMCM 91 3011.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 2 Oct. 1991.

Decided 26 Aug. 1992.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT E. Henriques, JAGC, USNR, Appellate Government Counsel.

1.  I. THE PROVIDENCE INQUIRY FAILS TO ESTABLISH APPELLANT'S GUILTY PLEAS TO CHARGE I, SPECIFICATIONS 1 THROUGH 4, STEALING MILITARY PROPERTY.
    II. SPECIFICATIONS 1 AND 2 OF CHARGE I ARE MULTIPLICIOUS BECAUSE APPELLANT'S ACTS CONSTITUTED ONE ACT.

2.  Appellant's assignment of error in this respect also purports to embrace Specifications 3 and 4

Before FREYER, REED and MOLLISON, JJ.

MOLLISON, Judge:

In mid-May 1990, the appellant stole two United States Treasury checks from the quarterdeck desk of a submarine off-crew office. The checks were issued by a Navy disbursing officer and were made payable to two former shipmates of the appellant. Subsequently, the appellant forged the signatures of the payees as endorsements to the checks and cashed them at two off-base check-cashing facilities. The appellant realized over $5,000 from this enterprise. Eventually he was caught and confessed to an agent of the Naval Investigative Service (NIS). Consistent with his pleas of guilty before a general court, the appellant was found guilty of two specifications of larceny of military property of some value (the two checks), two specifications of larceny of the proceeds of the checks, two specifications of forging the endorsements to the checks, and two specifications of uttering the forged checks in violation of Articles 121 and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 923. A military judge sitting alone sentenced the appellant to confinement for three years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the adjudged sentence, but suspended confinement in excess of 546 days pursuant to a pretrial agreement. On appeal the appellant asserts two errors were committed in his court-martial.[1] In essence he claims his pleas of guilty to Specifications 1 and 2 of Charge I, alleging the theft of the two checks, were improvident because the checks were not "military property," as alleged.[2] Whether or not the checks were

of Charge I, alleging larceny of the proceeds of the two checks. However, the issue of whether the property was "military property" or not pertains only to the first two specifications of Charge I, alleging theft of the two United States Treasury checks. The proceeds of the checks were not alleged to be "military property" and were not so treated by the military judge.

"military property" is important inasmuch as larceny of "military property" of a value of $100.00 or less carries a maximum confinement of one year, whereas larceny of non-military property of a value of $100.00 or less carries a maximum confinement of six months. Manual for Courts–Martial (MCM), United States, 1984, ¶ 46e. Appellant also claims that these two offenses should have been treated as multiplicious since the checks were stolen at the same time. The appellant seeks the dismissal of one of the specifications and a rehearing on the sentence. The Government agrees with the second assignment of error, but disputes the first. It urges only reassessment of the sentence.

### Providence of the Appellant's Guilty Pleas

■ An accused may not enter inconsistent, improvident or uninformed pleas of guilty. Article 45, UCMJ, 10 U.S.C. § 845. Before the military judge may accept an accused's plea of guilty, he must personally inform the accused of the nature of the offense to which the plea is offered and must inquire into the factual basis for the plea. Rule for Courts–Martial (R.C.M.) 910(c), (e), Manual for Courts–Martial (MCM), United States, 1984; *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969). For these purposes, the elements of the offenses should be described to the accused and the accused must admit their truth. R.C.M. 910(c)(1), (e) Discussion. Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Jemmings*, 1 M.J. 414 (C.M.A. 1976); *United States v. Jackson*, 23 M.J. 650 (N.M.C.M.R.1986), *pet. denied*, 24 M.J. 405 (C.M.A.1987). The military judge is not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or inconsistencies." *Jackson*, 23 M.J. at 652. Rather, the military judge is required to deal with potential issues raised in the providence inquiry or during the trial that indicate an inconsistency or a defense. *Id.* When the accused's responses reasonably raise the question of a defense, the military judge must make a more searching inquiry. *United States v. Timmins*, 21 C.M.A. 475, 45 C.M.R. 249 (1972). In short, a provident plea of guilty is one that is knowingly, intelligently, and consciously entered and is accurate and consistent, both factually and legally. *United States v. Sanders*, 33 M.J. 1026 (N.M.C.M.R.1991).

■ A Court of Military Review may not set aside a finding of guilty or the sentence on the basis of an error unless the error is materially prejudicial to the substantial rights of the appellant. Article 59(a), UCMJ; 10 U.S.C. § 859(a). Claims of error concerning findings based on guilty pleas can generally be articulated as follows: (1) something is omitted in the guilty plea inquiry, such as an advisement or a particular question, and/or (2) the accused sets up matter that is legally or factually inconsistent with the plea of guilty. If the claim of error concerns the former, that is, an advisement or the scope of the questioning, a Court of Military Review will examine the entire record to ascertain whether the accused was adequately advised and his admissions reasonably support the conclusion that the plea is factually accurate. *See United States v. Jones*, 34 M.J. 270 (C.M.A.1992); *United States v. Walker*, 34 M.J. 264 (C.M.A.1992); *United States v. Crouch*, 11 M.J. 128 (C.M.A.1981). As to the latter claim of error, the record must contain some reasonable ground for finding an inconsistency between the plea and the accused's statements, and reversal will not follow from the mere possibility of a conflict. *United States v. Logan*, 22 C.M.A. 349, 47 C.M.R. 1 (1973); *United States v. Logan*, 31 M.J. 910 (A.F.C.M.R.1990); *United States v. Tichy*, 50 C.M.R. 526 (N.C.M.R.1975). "The bottom line ... is that rejection of the plea requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

■ In this case the appellant was informed of the meaning of the term "military property," acknowledged his understanding of that term, and admitted the two checks were "military property."

Record at 17, 26. Nonetheless, the appellant asserts something was omitted from the guilty plea inquiry, that is, facts, not legal conclusions, that support the checks were "military property." More particularly, he asserts the U.S. Treasury checks must be of a "unique military nature" or were "put to a military function," before they qualify as "military property," and in the absence of such a showing in the record, the plea to larceny of "military property" is improvident. Appellant's Brief at 2–3 (citing *United States v. Schelin*, 15 M.J. 218 (C.M.A.1983), *United States v. Spradlin*, 33 M.J. 870 (N.M.C.M.R.1991), and *United States v. Ford*, 30 M.J. 871 (A.F.C.M.R.1990)). We must, therefore, examine the record of trial and the applicable law to determine whether a substantial basis for questioning the appellant's guilty pleas in this respect exists.

■ At the outset, we observe that this challenge to the providence of the pleas actually concerns two questions: (1) Who was the owner of the checks and (2) were the checks "military property"? Article 121(a), UCMJ, provides in part:

> Any person subject [to the UCMJ] who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind with intent permanently to deprive or defraud another person of the use and benefit of the property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny.

10 U.S.C. § 921(a) (brackets supplied). It is axiomatic that checks may be the subject

of a larceny. *E.g., United States v. Windham*, 15 C.M.A. 523, 36 C.M.R. 21 (1965). It is also axiomatic that the United States Government may be the "owner" or "any other person," and thus the victim of larceny within the meaning of Article 121. MCM ¶ 46c(1)(c). *See also United States v. Mills*, 5 C.M.R. 757 (A.F.B.R.1952). Under Article 121, a wrongful taking must be from the possession of the "owner" or of "any other person." "Possession" includes care, custody, management, and control. The terms "owner" and "any other person" mean the one having a greater right to possess the property than the accused. MCM ¶ 46c(1)(c).

■ The theft of an undelivered U.S. Government check is a theft of property of the United States. *Clark v. United States*, 268 F. 329 (6th Cir.1920) (construing the predecessor of 18 U.S.C. § 641, the federal civilian substantial equivalent of Article 121).[3] Indeed, whether or not a U.S. Government check has been delivered, its theft is a theft of property of the United States. *United States v. Santiago*, 729 F.2d 38 (1st Cir.1984); *United States v. Forcellati*, 610 F.2d 25 (1st Cir.1979), *cert. denied*, 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980) (all construing 18 U.S.C. § 641). *But see United States v. Fleetwood*, 489 F.Supp. 129 (D.Or.1980) (savings bonds in the hands of private parties was not a theft of property of the United States).

A check significantly remains the check of the drawer, for that is what gives it its value in the hands of the payee or in the hands of any third party who gets it and forges the payee's name on the back well enough to negotiate the check. The written instrument, moreover, is intend-

---

**3.** Title 18, U.S.Code § 641 provides:

Whoever embezzles, steals, purloins, or knowingly converts to his own use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his own use

or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned for not more than 10 years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

ed to be returned to the drawer as evidence of the drawer's payment of the face amount of the check to the payee. It is issued for an instrumental purpose, and it is retained upon its return as a receipt. For these instrumental and record-keeping purposes the check as a piece of paper never genuinely ceases to be the property of the issuer.

*Forcellati*, 610 F.2d at 31. A government check is intended to be returned to the government. "It is not like a title deed or other muniment of title that is delivered to a transferee for his keeping; rather, it is the government's physical symbol of its payment of an amount of money; it does not stop being a government check at any time." *Id.* at 32. Thus, "[t]he usual check theft case involves three parties: the drawer, the thief, and the person who accepts the forged check for payment. When the drawer is the government, it is the government's piece of paper and the thief has stolen the property of the government and of the person he has convinced to make payment." *United States v. Collins*, 464 F.2d 1163, 1165 (9th Cir.1972). Additionally, when the payee has a right to possess an undelivered check and the thief does not, the check is the property of the payee and there is no error in alleging ownership in the payee. *United States v. Buchhorn*, 15 C.M.A. 556, 36 C.M.R. 54 (1965) (theft of a check from the mails was a theft from the addressee); *United States v. Harris*, 21 C.M.R. 600 (C.G.B.R.1956) (theft of a government pay check from the executive officer's desk was a theft from the payee even though the check had not yet been delivered to the payee).

The appellant admitted that the checks belonged to the United States and that he took them from its possession without permission. Record at 24–25, 30, 32. He took them from the quarterdeck desk of the off-crew office of a fleet ballistic missile submarine. Record at 25. Photocopies purporting to be the relevant checks are set out in the charge sheet. The appellant admitted the photocopies were authentic. Record at 25, 27, 31. The checks were United States Treasury checks issued by a Navy disbursing officer. The appellant was not the payee. The appellant had been previously assigned to a fleet ballistic missile submarine. The payees were two of the appellant's former shipmates. Record at 26; Prosecution Exhibit 2 (appellant's confession to NIS). The amounts of both checks were substantial, $3,143 and $2,068. As a former submariner aboard a "boomer," the appellant had made deterrent patrols which lasted several months. Defense Exhibit J.

Most likely these checks were awaiting delivery to the payees. In any event, whether the checks were awaiting delivery to the payees or had been placed in the desk for safe-keeping by the payees is immaterial. These U.S. Government checks were being stored in a Government facility. Their storage in such a place is consistent with the exercise of care, custody, management and control by the United States. Hence the record indicates the United States was not only the drawer of the checks, but also possessed them, had a greater right to possession than the appellant, and therefore was the victim of their theft. In sum, when the appellant filched the checks, he was stealing the property of the United States, and his admissions to that effect were legally and factually sufficient. Having concluded the record adequately supports the conclusion the checks were property of the United States, it remains to be determined whether the record is similarly sufficient in respect to their identity as "military property."

██ We have previously recognized that under the right circumstances currency may be "military property" for purposes of Article 121. *Cf. Spradlin*. We have also held that the larceny of military pay and allowances was a theft of "military property." *United States v. Dailey*, 34 M.J. 1039 (N.M.C.M.R.1992) (funds paid as basic allowance for quarters are "military property"). Logically, United States Treasury checks issued by a military department for the payment of military pay and allowances, or other similar purposes, such as the payment of personnel claims associated with military service, are also "military property."

The appellant's admission that the checks were "military property" was not a legal

oxymoron. It is true the appellant did not state whether the checks were issued for the payment of military pay and allowances, but the record admits of virtually no other purpose. For example, they clearly were not issued by the Social Security Administration or the Internal Revenue Service. The checks were issued by the Navy to servicemembers. They were held in a Navy office. In sum, the record adequately supports the conclusion the checks were "military property." Finding nothing in the record of trial that shows a substantial basis in law or fact for questioning the guilty pleas, we will not reject them.

### Multiplicity of Offenses

 The appellant asserts, and the Government concedes, that the two specifications alleging larceny of the two checks were one offense. The record reflects the two checks were taken at the same time and place. Prosecution Exhibit 2. Under the circumstances, the appellant's acts constituted one larceny and the maximum authorized punishment should have been limited accordingly. MCM ¶ 46c(1)(h)(iii). The military judge addressed multiplicity for sentencing purposes, but did not treat these two offenses as one. Record at 35–38. We will remedy the error by consolidating these two offenses. We do not believe the overstatement of the maximum punishment had any impact on the appellant's decision to plead guilty. *Walker;* record at 35–38, 44. We will remedy this error by reassessing the sentence.[4]

Specifications 1 and 2 of Charge I are consolidated into one specification. With that consolidation, the findings of guilty are affirmed. Applying the principles set forth in *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the sentence as approved on review below is also affirmed.

Finally we note the military judge and the convening authority erroneously stated that the suspended confinement was to be suspended from the date of the convening authority's action, vice the date of sentencing as provided in the pretrial agreement. Record at 55; Convening authority's action dated 12 November 1991. This error was repeated in the promulgating order. A new, corrected promulgating order shall be issued to reflect the correct date from which the suspension was to run.

Senior Judge FREYER and Judge REED concur.

---

4. The appellant does not raise the issue of the multiplicity of the specifications alleging forgery, uttering, and larceny of the proceeds of those efforts. *See United States v. Jones,* 23 M.J. 301 (C.M.A.1987); *United States v. Allen,* 16 M.J. 395 (C.M.A.1983); *United States v. Gibbons,* 11 C.M.A. 246, 29 C.M.R. 62 (1960); *United States v. Ignatko,* 33 M.J. 571 (N.M.C.M.R.1991); *United States v. Stewart,* 29 M.J. 621 (C.G.C.M.R.), *pet. denied,* 30 M.J. 163 (C.M.A.1989); *United States v. Mireles,* 17 M.J. 781 (A.F.C.M.R.1983); *United States v. Burton,* 15 M.J. 791 (A.C.M.R. 1983); *United States v. Masuck,* 14 M.J. 1017 (A.C.M.R.1982); *United States v. Hudson,* 2 M.J. 958 (A.C.M.R.1976), *aff'd,* 5 M.J. 413 (C.M.A. 1978); *United States v. Lewis,* 31 C.M.R. 575 (A.F.B.R.), *pet. denied,* 31 C.M.R. 314 (C.M.A. 1961); *United States v. Pineo,* 31 C.M.R. 347 (A.B.R.), *pet. denied,* 31 C.M.R. 314 (C.M.A. 1961); *United States v. Murkey,* 25 C.M.R. 784 (A.F.B.R.1957), *pet. denied,* 25 C.M.R. 486 (C.M.A.1958). We express no opinion on the merits of such an assignment of error, however, assuming its merits, we again do not believe that the appellant was misled in any way or that an overstatement of the maximum authorized punishment would have had any impact on his pleading guilty. Our reassessment takes into account this possibility that the maximum punishment was overstated.