**UNITED STATES**

v.

**Duane E. JACKSON, 524 11 9995, Signalman Seaman Recruit (E–1), U.S. Navy.**

**NMCM 85 4059R.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 16 Sept. 1985.

Decided 31 Oct. 1986.

---

LCDR J.J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT RICHARD K. HODGES, JAGC, USNR, Appellate Defense Counsel.

Capt. H.C. LASSITER, USMCR, Appellate Government Counsel.

En Banc.

MITCHELL, Judge:

A divided panel of this Court initially affirmed the findings of guilty and sentence as approved below. The accused petitioned the Court of Military Appeals for a grant of review, but later moved to withdraw his petition in anticipation of a request for reconsideration by this Court. The Court of Military Appeals remanded the case to this Court for further review.

Upon remand, *en banc* reconsideration was ordered and oral argument heard. On reconsideration, although we affirm the findings and sentence as approved by the convening authority, we reject the rationale of the initial majority opinion.

Appellant was convicted pursuant to his guilty pleas at a bench trial of seven specifications of failing to go to restricted muster (Article 86(1), Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 886(1)), and one specification alleging an unauthorized absence (UA) of about twelve days duration (Article 86(3), UCMJ). Evidence of one prior nonjudicial punishment for cocaine use and an unsworn statement by the appellant reflecting his commitment to cocaine abuse and noting his lifestyle's incompatibility with Navy standards and desire for separation[1] were considered at sentencing. The sentence included a bad-conduct discharge. Before this Court the appellant complains that his pleas were improvident since all of his alleged absence offenses constituted but one offense of UA, the maximum punishment for which does not extend to a bad conduct discharge and that, in any event, there was but one course of conduct which, in view of ultimate offense and sentence multiplicity doctrines, precluded applicability of the escalator clause (Rule for Courts-Martial (R.C.M.) 1003(d)(3), Manual for Courts-Martial, United States, 1984 (MCM)).

The providence inquiry reveals that the appellant was assigned to Naval Station, Long Beach, California. He received nonjudicial punishment in the form of restriction and other punishments on Friday, 9 August 1985. Sometime prior to 0730 on 10 August, the appellant was given paperwork defining his restriction and setting forth the times and places of the restriction muster to which the appellant was required to report. He did not think he could go for any time without cocaine, so he left the station shortly after the NJP proceeding and drifted on and off base over the weekend. He did not report to many of the

---

1. At oral argument, appellate defense confirmed that this was the appellant's desire at trial.

restriction musters. On Monday, 12 August 1985, appellant missed the 0700 restriction muster but was at his unit that morning and admitted abandoning it to commence a protracted unauthorized absence at 1000 that day.[2] Appellant was unable to recall much detail of his activities during the period in question due to cocaine ingestion, but he spent his time within 75–100 miles of Long Beach. Appellant's absence was terminated when civilian police stopped the car in which he and a friend were riding and subsequently turned the appellant over to the Naval Station on 24 August 1985.

In advising the appellant of the maximum punishment the military judge informed him that in order for a bad-conduct discharge to be authorized in his case, appellant would have to be convicted of the twelve-day absence and at least one of the failures to go or he would have to be found guilty of at least six failures to report to restriction muster. The military judge confirmed the appellant's understanding of the matter and of its comportment with advice of counsel, and asked if the appellant had any questions. The appellant said he had no questions and made no effort to change his pleas or provide additional or different information.

 In many UA situations, courts must avoid over-technical distinctions between the various forms of the offense, as well as between that offense and other offenses which are factually closely related, in order to avoid absurd results. *United States v. Scardina,* 18 M.J. 571 (N.M.C. M.R.1984). *Cf. United States v. DiBello,* 17 M.J. 77 (C.M.A.1983); *United States v. Loos,* 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954); *United States v. Ponka,* 9 M.J. 656 (N.C.M.R.1980). The same is true with other offenses having multiple variations of commission. *E.g. United States v. Ragins,* 11 M.J. 42 (C.M.A.1981) (resolving distinc-

tions in larceny forms). One of the purposes of the providence inquiry is to have the military judge assure himself and reviewers on the record that there is a factual basis for pleas of guilty. The providence inquiry also shows on the record that an accused knew that to which he pleaded guilty. *United States v. Care,* 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969). It is not the purpose of the providence inquiry to have the record factually prove guilt beyond a reasonable doubt beyond the impact of the guilty pleas themselves. Nor is it the purpose of such inquiry to seek preference for charging misconduct one way over another. Inconsistencies and apparent defenses must, however, be resolved or the guilty pleas must be rejected. *United States v. Jemmings,* 1 M.J. 414 (C.M.A. 1976). The military judge is not required by any known authority to embark on a mindless fishing expedition to ferret out or negate all possible defenses or potential inconsistencies. The trial judge is only required to deal with those potential issues raised in the providence inquiry responses or by evidence presented during the trial indicative of inconsistency or defense. R.C.M. 910(d) and (e); *United States v. Timmins,* 21 U.S.C.M.A. 475, 45 C.M.R. 249 (1972).

 In the instant case, the accused's own lips spoke with certitude that he was present at his command on Monday, 12 August 1985, until about 1000, although he missed an assigned muster at 0700. He was charged with unauthorized absence as of 0730 but the revealed facts show an unauthorized absence commencing when he decided to abandon his unit at 1000, as he plainly told the military judge that he did. Consequently, the providence inquiry revealed a sufficient factual basis for provident pleas of guilty to unauthorized absence from 1000, 12 August, until 24 August

---

**2.** Restriction papers filed before this Court show that appellant was restricted to the Naval Station and was required to muster at certain times beginning on 9 August 1985. Appellant acknowledged the restriction papers at 0915 on 9 August. Appellant was not charged with miss-

ing restriction muster at 1230, 2000, or 2130 on 9 August, indicating that, in practice, restriction may not have commenced until the day following notification. But we need not consider the restriction papers to resolve this case, and cannot do so to sustain the providence inquiry.

1985, without regard to the events of the previous weekend.

Appellant's responses to questions about the weekend activities make clear that the gravamen of what he did was to break the limits of his restriction (though not charged) and to fail to report for his restriction musters as charged. By his own admissions he did not "abandon" or "leave" his unit within the meaning of Article 86(3), UCMJ, until Monday. Instead he "drifted" in and out of his command rather frequently over the weekend, factually indicating that he had not "absented himself" from his unit except to the technical extent of his departure from the limits of his restriction. Appellant was not charged with an Article 86(3) absence prior to the morning of 12 August, which, along with appellant's and defense counsel's perception of events, justified an inference that he must have been around the command enough over the weekend to avoid being considered UA in the sense of Article 86(3), UCMJ. Since he had not abandoned his unit he, of course, would perceive no need to formally submit himself to military control over the weekend so as to terminate such an absence. The events depicted in the providence inquiry do not realistically admit themselves to the casual presence doctrine attending the termination of Article 86(3) absences. *See United States v. Jackson,* 2 C.M.R. 96 (C.M.A.1952). We are especially aware that the instant events occurred on a weekend where appellant had no apparent duties other than to observe the conditions of his restriction which he, by his own admission, did not-do on numerous occasions. We see little significance in whether appellant was charged with breaking restriction in each instance or failure to report for each muster, other than the command probably not being aware of his precise movements. The military judge's presentation of a potential dilemma regarding the maximum punishment did not cause the appellant to change the answers to the providence questions, to recharacterize his weekend activi-

ties, or to seek clarification from the military judge.

■■■ Appellant's statement to the military judge that he did not make any of the weekend musters, in context, refers to his missing the musters charged and does not contradict his statement that he drifted in and out of the command during that time. Appellant's statement that he wasn't around that weekend, in context, refers to his view that he was repeatedly breaking restriction most of the weekend. Absent serious inconsistency there is nothing in the providence inquiry or other statements of the appellant which undermines his pleas. While the providence inquiry could possibly have been conducted with more precision, and the appellant's responses more articulate, the inquiry was adequate, and we will not ignore the plain contextual meaning of the appellant's own words in resolving this issue, especially where it appears that the appellant and military judge understood each other. The appellant will not now be heard to place characterizations on his trial statements which are not warranted by what was actually said and understood at trial. *Cf. United States v. Davenport,* 9 M.J. 364 (C.M.A.1980). The record adequately establishes seven discrete failures to make restriction muster and one prolonged UA. There is no legitimate ultimate offense doctrine issue, since this Court is unwilling to extend the doctrine by compelling the charging of discrete multiple commissions of the same offense in a single charge.

■■■ There is no authority compelling the rejection of guilty pleas solely because of the existence of sentence multiplicity, assuming, *arguendo,* that there is such in this case. Since discrete offenses were pleaded by the United States and proved by the provident guilty pleas of the appellant, the defense arguments challenging the application of R.C.M. 1003(d)(3) in this case are also rejected.[3] We see no compelling

---

3. We see no danger that this case will serve as precedent for the wholesale carving up of a lengthy unauthorized absence into an endless

chain of failures to go to appointed place of duty or, where factually feasible, breaking restriction offenses, practices well guarded against

**654**

need to amend Charge I and its Specification, alleging the longer unauthorized absence, to reflect the correct hour of inception since the variance is immaterial. The findings are affirmed.

Since we hold the appellant's pleas to seven separate failures to go to appointed place of duty and one prolonged absence to be provident, and, since there is no multiplicity among them, the sentence as approved on review below is also affirmed.

Judges COUGHLIN, GLADIS, RILEY, CASSEL, MIELCZARSKI, and DECARLO concur.

GRANT, Judge (concurring in the result):

I concur in affirming the findings of guilty and sentence for the reasons set forth in the initial majority opinion in *United States v. Jackson*, No. 85 4059 (NMCMR 11 July 1986).

GORMLEY, Chief Judge (absent).

by the unreasonable pleading doctrine. R.C.M. 307(c)(4). The decision in this case is strictly

limited to its facts and cannot be more broadly construed.