**UNITED STATES, Appellee,**

v.

**Tommy L. HARRIS, Private First Class, U.S. Army, Appellant.**

No. 60,479.
CM 8701219.

U.S. Court of Military Appeals.

Sept. 27, 1989.

For Appellant: *Captain Patricia D. White* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Cap-*

tain *James E. O'Hare* (on brief); *Lieutenant Colonel Joel D. Miller* and *Captain Brian D. Bailey.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Daniel J. Dell'Orto* (on brief).

## Opinion of the Court

EVERETT, Chief Judge:

Contrary to his pleas,[1] appellant was convicted by special court-martial including enlisted members of leaving his place of duty without authority, disrespect toward a superior noncommissioned officer, disobeying a noncommissioned officer, resisting apprehension, and drunk driving, in violation of Articles 86, 91, 95, and 111, Uniform Code of Military Justice, 10 USC §§ 886, 891, 895, and 911, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $200.00 pay per month for 3 months, and reduction to private E–1. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge (suspended for 6 months), confinement for 34 days, forfeiture of $200.00 pay for 1 month, and reduction to private E–1. The Court of Military Review affirmed the findings and sentence. 25 MJ 909 (1988). We granted review of this issue raised by appellate defense counsel:

> WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION FOR RESISTING APPREHENSION.

## I

At 2:30 a.m. on February 22, 1987, a military policeman, Corporal Mitchell, observed Harris speeding through a red light in Fort Riley, Kansas. Mitchell turned on his siren and emergency lights and pursued appellant through the base and into the civilian community. A witness testified that the siren could be heard from as far as

a mile away. The chase was conducted at speeds of 75 miles per hour through a 45–mile–an–hour zone. Mitchell testified that he was as close as 15 to 20 yards to appellant's car during the chase.

Harris drove into a trailer park, abandoned the car, and fled into a wooded area even though Mitchell shouted, "Hold it, Military Police." After a short time, appellant was observed surreptitiously trying to enter his trailer and was apprehended. He offered no resistance at that time.

Mitchell testified that his original intent had been to make an administrative stop, rather than an apprehension. After the stop, he would have decided whether to apprehend appellant. The policeman also testified that he did not consider the action he had taken before arriving at the trailer park to be part of the apprehension.

## II

### A

Article 95 provides:

> Any person subject to this chapter who *resists apprehension* or breaks arrest or who escapes from custody or confinement shall be punished as a court-martial may direct.

(Emphasis added.)

"Apprehension is the taking of a person into custody" by a person in authority. Art. 7, UCMJ, 10 USC § 807; *see also* RCM 302(a)(1), Manual for Courts–Martial, United States, 1984. In military law, it is the equivalent of an arrest in civilian practice. On the other hand, "arrest" in military law is a term of art and means "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits." Art. 9, UCMJ, 10 USC § 809.

According to paragraph 19(b)(1), Part IV, Manual, *supra*, the elements of the offense of resisting apprehension are:

---

1. The statement of the pleas on Special Court–Martial Order No. 33, dated 1 July 1987, is erroneous.

(a) That a certain person attempted to apprehend the accused;

(b) That said person was authorized to apprehend the accused; and

(c) That the accused actively resisted the apprehension.

■ Under Article 80 of the Code, 10 USC § 880, "specific intent" is necessary for an "attempt" to commit a crime. Likewise, we are sure that for the crime of resisting apprehension, there must have been a "specific intent" on the part of the person attempting the apprehension. *See United States v. Baker*, 22 B.R. 131, 135 (1943). Thus, a policeman's intent to stop a vehicle for purposes of investigation is not sufficient—*see Smith v. State*, 739 S.W.2d 848, 850 (Tex.Cr.App.1987); he must intend to apprehend the occupant of the vehicle.

In this respect, the Government's evidence against Harris was deficient. The military policeman, Corporal Mitchell, never testified unequivocally that he intended to apprehend Harris while pursuing him on the highway. The majority in the court below conceded that his testimony was "ambiguous"; but Judge Robblee, dissenting, stated that "the evidence in the case at bar, particularly the testimony of the arresting officer alluded to in the majority opinion, does not convince me beyond a reasonable doubt that the arresting officer was attempting an apprehension while in hot pursuit." 25 MJ at 913. The majority ultimately disposed of the "ambiguity" with this observation:

> The law regarding apprehension, however, does not turn on the police officer's subjective motive. What matters is what he communicated to the appellant. *See United States v. Sanford*, 12 M.J. 170, 174 (C.M.A.1981) (objective-circumstances test applied to determine whether appellant was being restrained for law enforcement purposes). Rule for Courts-Martial 302(d)(1) has the same objective standard which provides that notice for apprehension "may be implied by the circumstances."

25 MJ at 911.

■ Certainly, as the majority recognized, a person cannot be convicted of resisting arrest unless in some way he was made aware that "a certain person" was attempting to apprehend him. Of course, the circumstances here—especially the hot pursuit by a police car with lights and sirens—gave Harris ample reason to believe that a police officer was trying to apprehend him.

■ This, however, is not decisive, for it still was necessary that Corporal Mitchell possess the specific intent to apprehend Harris. Unfortunately for the Government's case, Mitchell, in his testimony—despite being questioned closely on this point—never was willing to say that, while in pursuit of appellant, he at any time intended to apprehend him. This testimony is somewhat implausible for, typically, a military policeman in hot pursuit at high speeds with siren on and lights blazing intends to apprehend the person whom he is pursuing. We must, however, take the record of trial as we find it; and it does not contain the necessary evidence of specific intent on the part of the military policeman.

B

A more basic problem with the Government's case is that no evidence was offered that Harris "resisted" any apprehension which might have been intended by Corporal Mitchell during the pursuit. The Government argues that to flee from a police officer attempting apprehension is to "resist" the apprehension. This contention is supported by the Manual for Courts-Martial, which uses this language:

> (c) *Nature of the resistance.* The resistance must be active, such as assaulting the person attempting to apprehend or *flight.*

Para. 19c(1)(c) (emphasis added). The two preceding Manuals defined "resisting apprehension" in this fashion:

> Resisting apprehension consists of an active resistance to the restraint attempted to be imposed by the person apprehending. The resistance may be accomplished *by flight* or by assaulting or

striking the person attempting to apprehend. Mere words of remonstrance, argument or abuse, and attempts to escape from custody after the apprehension is complete, will not constitute the offense of resisting apprehension although they may constitute other offenses.

Para. 174*a*, Manual for Courts–Martial, United States, 1969 (Revised edition) (emphasis added); *see* para. 174*a*, Manual for Courts–Martial, United States, 1951.

Moreover, a prominent commentator on the Uniform Code described resistance to apprehension in this manner:

When a lawful restraint is sought to be imposed upon a person subject to the Code by a member of the armed forces empowered to make an apprehension under the circumstances involved, the attempt may be thwarted or made more difficult by the active resistance of the person sought to be restrained. Such resistance may be manifested by assaulting or striking the member of the armed forces attempting to apprehend, or by evading him by fleeing from him.

J. Snedeker, *Military Justice Under the Uniform Code* 662 (1953).

■ Although this authority is formidable, we take a different position because we conclude that the drafters of the Uniform Code never contemplated that "flight" from attempted apprehension would constitute a violation of Article 95. "Apprehension" is a term that was not used in military law prior to enactment of the Code. Article 95 has a meager legislative history—which consists of references to "A.W. [Article of War] 69; proposed A.G.N. [Articles for the Government of the Navy], article 9(50)." Hearings on H.R. 2498 before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1227 (1949), *reprinted in Index and Legislative History, Uniform Code of Military Justice* 1227. Article of War 69 concerns "Arrest or Confinement"; and, of course, in this context, "arrest" is quite different from "the taking ... into custo-

dy" which the Uniform Code now refers to as "apprehension." *See also* para. 157*a*, Manual for Courts–Martial, U.S. Army, 1949; para. 139a, Manual for Courts–Martial, U.S. Army, 1928; A.W. 68.

We have found no explanation as to the background of the language in the 1951 Manual, *supra*, concerning "flight." In view of the lack of military precedent for the offense of "resisting apprehension," we must assume that the drafters of the Code intended to prohibit the same conduct which in civilian law was punishable at that time as resisting arrest. *But see United States v. Mercer*, 11 CMR 812 (AFBR 1953).

In most jurisdictions—absent specific statutory language to the contrary—flight from an arresting officer has not been considered resistance to an arrest. *See State v. Swanson*, 34 Or.App. 59, 578 P.2d 411 (1978); *see also State v. Sanchez*, 145 Ariz. 313, 701 P.2d 571, 573 (1985). As the Supreme Court recently noted:

[T]he usual manner of deterring illegal conduct—through punishment—has been largely ignored in connection with flight from arrest. Arkansas, for example, specifically excepts flight from arrest from the offense of "obstruction of governmental operations." The commentary notes that this "reflects the basic policy judgment that, absent the use of force or violence, a mere attempt to avoid apprehension by a law enforcement officer does not give rise to an independent offense." Ark.Stat.Ann. § 41–2802(3)(a) (1977) and commentary. In the few States that do outlaw flight from an arresting officer, the crime is only a misdemeanor. *See, e.g.,* Ind.Code § 35–44–3–3 (1982).

*Tennessee v. Garner*, 471 U.S. 1, 10 n. 9, 105 S.Ct. 1694, 1700 n. 9, 85 L.Ed.2d 1 (1985).[2]

Perkins states: "While it is the duty of the citizen to submit to lawful arrest, mere flight to avoid apprehension does not con-

---

**2.** In *Garner*, the majority held that a Tennessee statute which authorized use of deadly force against a fleeing felon was unconstitutional.

stitute resisting an officer because there is a distinction between avoidance and resistance or obstruction." R. Perkins, *Criminal Law* 424 (1957); 496 (2d ed. 1969); 554 (3d ed. 1982). This was the rule when the Code was enacted. Indeed, the Uniform Arrest Act (§ 5) in 1942 proposed that resisting arrest consist solely of "using force or any weapon in resisting arrest" whenever "a person has reasonable ground to believe that he is being arrested by a peace officer." 28 Va.L.Rev. 1, 345 (1942).

We also observe that the Model Penal Code would "not ... criminalize flight from arrest or non-violent resistance thereto." The rationale for this view is:

> The better response to such conduct is to authorize police to pursue fleeing persons and use force if necessary to effect arrest. When the arrest is made, prosecution may be had for the original offense. If the arrestee is innocent of that crime, it may well be thought unfair to punish him for spontaneous flight or some other reflexive act of resistance that does not risk breach of the peace. More to the point, authorizing criminal sanctions for any effort to avoid arrest would invite grave abuse. Minor acts of evasion and resistance are sufficiently ambiguous to give rise to honest error, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement.

Commentary to § 242.2, American Law Institute *Model Penal Code and Commentaries* 214 (1980).

Since Congress gave no indication that it intended for the Article 95 violation to encompass flight from apprehension, we shall not torture the language of the Uniform Code to expand criminal liability in this area. Our conclusion in this regard conforms to a decision of the United States Army Court of Military Review that "fleeing or eluding a police officer is not a residuum of elements of Article 95, UCMJ." *United States v. Kline*, 15 MJ 805, 806 (1983), *aff'd on other grounds*, 21 MJ 366 (CMA 1986).

Our decision does not leave military authorities helpless in dealing with persons who flee a policeman attempting to apprehend them. For one thing, on military installations, general regulations can be promulgated to require that cars stop for a police vehicle with sirens or lights on. Failure to comply with these regulations will then be punishable under Article 92, UCMJ, 10 USC § 892. There are also state statutes similar to these regulations. *See State v. Swanson, supra,* 578 P.2d at 412 n. 1. These statutes may apply to military bases under the Assimilative Crimes Act, 18 USC § 13. *United States v. Kline, supra.* Likewise, if a police officer orders a suspect to halt or to stop his vehicle, his disobedience is punishable.

### III

The decision of the United States Army Court of Military Review is reversed as to the Additional Charge and its specification and the sentence. The findings of guilty thereon are set aside and that Additional Charge is dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Judges COX and SULLIVAN concur.