**446**

UNITED STATES, Appellee,

v.

Richard BURGESS, Specialist, U.S. Army, Appellant

No. 65,027.
CM 8902534.

U.S. Court of Military Appeals.

Argued March 12, 1991.

Decided July 11, 1991.

For Appellant: *Captain Brian D. Bailey* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Lauren B. Leeker* (on brief).

For Appellee: *Captain Marcus A. Brinks* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Denise J. Arn* (on brief).

### Opinion of the Court

COX, Judge:

Pursuant to his pleas, appellant was convicted, among other things,[1] of resisting apprehension by an armed forces policeman who was authorized to apprehend him, in violation of Article 95, Uniform Code of Military Justice, 10 USC § 895. The findings and sentence were affirmed by the Court of Military Review in a short-form opinion dated April 13, 1990.

Appellant petitioned this Court for further review, contending that his pleas of guilty for resisting apprehension must be set aside because his conduct constituted only flight, not resisting apprehension. We granted his petition to determine if the record of trial established a factual basis sufficient to support a conviction of resisting apprehension under Article 95 of the Uniform Code. After careful review, we hold that it did not and that appellant's "flight" was not a violation of Article 95. *United States v. Harris*, 29 MJ 169 (CMA 1989).

### I

On June 9, 1989, in Clarksville, Tennessee, appellant met with a prospective cocaine buyer. Unbeknownst to him, the buyer actually was an undercover agent of the CID (Criminal Investigation Command) who was part of a drug suppression team investigating appellant's recent drug activi-

---

1. In addition to resisting apprehension, a military judge sitting alone as a general court-martial convicted appellant of distributing and attempting to distribute cocaine, in violation of Articles 112a and 80, Uniform Code of Military Justice, 10 USC §§ 912a and 880, respectively.

He was sentenced to a dishonorable discharge, confinement for 8 years, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence but reduced the confinement to 5 years.

ty.[2] The rendezvous took place in the parking lot of a local retail store; both appellant and the agent remained in their respective cars during the meeting. A surveillance team consisting of military agents and Tennessee State Police was also at the site, waiting and prepared to apprehend appellant when the drug deal was completed.

Appellant and the agent had previously negotiated the sale of one ounce of cocaine, but when appellant noticed a police car near the scene, he became hesitant. The agent suggested that they move elsewhere (each man still remained in his own automobile), and appellant agreed. The two cars began to move; appellant's car followed the agent's.

As this was occurring, the surveillance team watched for the undercover agent's prearranged signal—the illumination of the brake lights on the agent's car—indicating that the deal was done and that they should act. Consequently, when the agent's car moved and the brake lights brightened, the surveillance team incorrectly assumed that the signal had been given, and they moved in to arrest appellant. One CID agent "jumped out of a vehicle and yelled, 'Police, you're under arrest!'"

Appellant ignored the agent and drove off in his car. According to a stipulation of fact, "He was immediately pursued by several [military and state police] vehicles," with sirens blaring and lights flashing. It was this flight by appellant that formed the basis of the resisting-apprehension charge.

## II

"Resisting apprehension" is proscribed by Article 95. The elements of the offense are:

(a) That a certain person attempted to apprehend the accused;

(b) That said person was authorized to apprehend the accused; and,

(c) That the accused *actively resisted* the apprehension.

Para. 19b(1), Part IV, Manual for Courts-Martial, United States, 1984 at IV–33 (emphasis added).

The record reveals that the first two elements of the Article 95 offense were satisfied. The agent who jumped out of the car did in fact attempt to apprehend appellant—surely, the language: "Police, you're under arrest," yields no other conclusion. Furthermore, the military agents clearly were authorized to perform criminal apprehensions, and the agent who first tried to apprehend appellant was wearing "a ... jacket with the CID emblem visible." Moreover, during the providence inquiry, appellant admitted that he had recognized the person who attempted to apprehend him to be a military policeman who had the authority to arrest him.

The key to resolving this case lies in whether the third element of the Article 95 offense exists. We must determine whether appellant "actively resisted" the attempted apprehension by driving away from a police officer who had communicated to appellant that he was under arrest. The Government contends that appellant's flight (driving away and leading authorities on a chase) alone *was* sufficient to constitute resisting apprehension under Article 95. We disagree.

## III

The Manual explains the "nature of the resistance" as a type that "must be active, such as assaulting the person attempting to apprehend...." Likewise, the explanation states that "flight" constitutes resisting apprehension. Para. 19c(1)(c), Part IV, Manual, *supra.* However, in *United States v. Harris, supra,* we rejected this view. We concluded: (1) "that the drafters of the Uniform Code never contemplated that 'flight' from attempted apprehension

2. The undercover agent had become acquainted with appellant through a confidential source, and they had engaged in two previous drug transactions. The first transaction occurred on May 24, 1989, when appellant sold the agent 3 grams of cocaine; the second took place on May 30, when he sold the same agent over 5 grams of cocaine.

would constitute a violation of Article 95," *id.* at 172; and (2) " 'fleeing or eluding a police officer is not a residuum of elements of Article 95, UCMJ.' *United States v. Kline,* 15 MJ 805, 806 (1983), *aff'd on other grounds,* 21 MJ 366 (CMA 1986)." 29 MJ at 173. We are not persuaded to change this view.

We emphasize however, that such conduct (flight from an arresting officer) does not leave military authorities helpless:

> Failure to obey the lawful order of one not a superior is an offense under Article 92(2), 10 U.S.C. § 892(2), provided the accused had a duty to obey the order, such as one issued by a sentinel *or a member of the armed forces police.*

Para. 16c(2)(c)(ii), Part IV, Manual, *supra* (emphasis added); *see United States v. Harris, supra* at 173. In addition, military installations may promulgate general regulations that require automobiles to stop when being pursued by police vehicles with sirens or lights on. Violators would then be subject to prosecution under Article 92, UCMJ, 10 USC § 892. Moreover, state statutes [3] may also provide deterrence to such behavior on military bases under the Assimilative Crimes Act, 18 USC § 13. *United States v. Harris, supra.*

Finally, once one is in custody, any type of flight would be covered by Article 95 as an escape from custody.[4]

## Conclusion

The decision of the United States Army Court of Military Review as to Charge I and its specification is reversed.[5] The findings of guilty thereon are set aside and that Charge is dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

3. *See State v. Pollack,* 462 N.W.2d 119, 120 (N.D. 1990).

4. We recognize that, in close cases or where the evidence is conflicting, it may be necessary to charge some of these theories in the alternative.

5. We have reviewed the issues raised personally by appellant pursuant to *United States v. Grostefon,* 12 MJ 431 (CMA 1982), and we find no merit to them.