UNITED STATES

v.

**Andre M. GRADY, 547 13 9761, Seaman Recruit (E–1), U.S. Navy.**

**NMCM 91 1405.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 11 April 1991.

Decided 27 March 1992.

**1046**

Maj G.S. WARNER, USMC, Appellate Defense Counsel.

CDR EDWARD F. WARD, JR., JAGC, USNR–R, Appellate Defense Counsel.

LT RALPH G. STIEHM, JAGC, USNR, Appellate Government Counsel.

Before FREYER, Senior Judge, and HOLDER and MOLLISON, JJ.

HOLDER, Judge:

In accordance with his pleas, the appellant was found guilty of eight specifications of unauthorized absence, one specification of resisting apprehension, one specification of destruction of government property and one specification of assault, violations of Articles 86, 95, 108 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 895, 908, 928, respectively. Appellant was sentenced by a special court-martial, military judge alone, to confinement for 4 months, forfeiture of $350.00 pay per month for 4 months, and a bad conduct discharge. The convening authority approved the sentence as adjudged.

Appellant has submitted seven assignments of error.[1] Appellant's first assignment of error claims that his pleas to Charge IV and the specification thereunder were not provident in that the providence inquiry failed to establish that appellant offered to do bodily harm to the alleged victim, Operations Specialist First Class (OS1) Putas, USN. We disagree. Appellant admitted during the providence inquiry that OS1 Putas asked appellant for identification, appellant then took a knife from his pocket, a knife with a three-inch blade, held the knife up and told OS1 Putas not to come near him. Appellant stated that he believed OS1 Putas was put in fear. We note that, in accordance with his plea, appellant was found guilty of assault with a knife. The record adequately established the basis for acceptance of appellant's plea. *United States v. Jackson*, 23 M.J. 650 (N.M.C.M.R.1986), *pet. denied*, 24 M.J. 405 (C.M.A.1987).

Appellant's second assignment of error has merit. Appellant's providence inquiry reveals that he did nothing more than run when the DoD police officers appeared on the scene (Record at 30). There is no evidence that the DoD police officers chased the appellant. The police were not endangered in any way. Thus, on the issue of flight, the case is similar to *United States v. Harris*, 29 M.J. 169 (C.M.A.1989). *See also, United States v. Nocifore*, 31 M.J. 769 (A.C.M.R.1990). The finding of guilty of resisting apprehension will be set aside, and that charge will be dismissed.

After reviewing the entire record of trial, we are convinced that even in the absence

1. I. APPELLANT'S PLEAS TO CHARGE IV AND THE SPECIFICATION THEREUNDER WERE NOT PROVIDENT.
II. APPELLANT'S PLEAS TO CHARGE II AND THE SPECIFICATION THEREUNDER WERE NOT PROVIDENT.
III. APPELLANT'S PLEAS TO CHARGE III AND THE SPECIFICATION THEREUNDER WERE NOT PROVIDENT.
IV. THE MILITARY JUDGE ERRED BY CONTINUING TO ACCEPT APPELLANT'S PLEAS OF GUILTY TO THE CHARGES AND SPECIFICATIONS WHEN APPELLANT'S SWORN STATEMENT DURING THE PROVIDENCE INQUIRY RAISED A REASONABLE POSSIBLE DEFENSE OF LACK OF MENTAL RESPONSIBILITY AND THE MILITARY JUDGE FAILED TO CONDUCT ANY INQUIRY INTO THIS POSSIBLE DEFENSE.
V. THE CONVENING AUTHORITY FAILED TO HONOR THE TERMS OF THE PRETRIAL AGREEMENT NEGOTIATED IN APPELLANT'S CASE AND FAILED TO CONSIDER CLEMENCY MATTERS.
VI. THE LEGAL OFFICER FAILED TO PROPERLY ADVISE THE CONVENING AUTHORITY REGARDING THE PRETRIAL AGREEMENT AND CLEMENCY MATTERS.
VII. APPELLANT HAS BEEN DENIED EFFECTIVE POST-TRIAL REPRESENTATION.

of Charge II and its specification, the trial judge would have adjudged the same sentence. Therefore, no rehearing on sentencing is required. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

▮ The remaining assignments of error are without merit. We do find that a window of a barracks on a military installation is clearly military property. The record of trial evinces a clear understanding by appellant of all that transpired. Appellant suffered no prejudice due to minor inconsistencies or omissions in the staff judge advocate advice or the convening authority's action that cannot be corrected in our decretal paragraph.

The findings of guilty of Charge II and its specification are set aside and Charge II and its specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms the sentence.

FREYER, Senior Judge (concurring):

On the basis of current law, I fully concur in Judge Holder's opinion. Although it may be feasible to distinguish this case on the ground that the appellant's shutting and locking the door of his room arguably amounted to active resistance, there is not the slightest indication that the police had pursued the appellant to his room nor that the locked door, in fact, obstructed the police in any way. Consequently, this case appears to be no different from one in which a prospective arrestee shuts the door of his car before driving away from his pursuers, for in both cases the shutting of the door is not shown to have played any obstructive role in the escape and is merely an attendant circumstance. If, therefore, the rule established by *United States v. Harris,* 29 M.J. 169 (C.M.A.1989), and *United States v. Burgess,* 32 M.J. 446 (C.M.A.1991), is to be applied in good faith, I agree with Judge Holder that this case must be viewed as one of mere flight.

Insofar as the dissent seeks to rely on the appellant's brandishing of a knife, the record demonstrates that the brandishing of the knife wholly preceded the attempted apprehension and ended at the very moment that the apprehension was attempted and the flight began; moreover, as the appellant was separately charged with and convicted of assault with the knife by pointing it at Petty Officer Putas, a separate charge of resisting apprehension, insofar as it rested upon pointing the knife, would plainly be multiplicious for findings with the assault. Similarly, the kicking out of the screen was separately addressed in a charge of willfully damaging military property and, in any event, can in no way be deemed to have obstructed pursuit.

Recent incidents involving high-speed automobile chases of fleeing suspects demonstrate that even mere flight poses distinct dangers to innocent members of society, and that those dangers seemingly outweigh the concerns of the drafters of the Model Penal Code referred to in the dissent. In addition, disobedience of orders to halt issued by civilian law enforcement officers, including those employed by the Department of Defense to investigate criminal activity or to patrol military installations, is not directly punishable under Article 92(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892(2), which addresses only orders issued by members of the armed forces, with the result that an unjustifiable disparity exists in the authority to secure submission to apprehensions between civilian and military police officers. *Burgess* suggests a variety of measures which would lead to different rules depending on the regulations in effect at individual installations or the utility of the Assimilative Crimes Act (A.C.A.) (18 U.S.C. § 13) thereon and the provisions of state law. Such a hodgepodge can scarcely be considered a satisfactory method of addressing a common problem. Consequently, I believe that the *Harris–Burgess* rule deserves to be seriously reexamined. Even if that rule is left undisturbed as regards Article 95, UCMJ, however, I suggest that resisting apprehension by mere flight ought to be cognizable as a potential violation of Article 134, UCMJ, 10 U.S.C. § 934. In deference to the Constitutional requirement of fair notice, I certainly do not treat lightly

the recognition of new Article 134 offenses as a matter of general principle, but a member who flees from a lawful apprehension will, in most instances, be behaving, and will surely realize that he is behaving, in a manner prejudicial to good order and discipline in the armed forces or tending to bring discredit on the armed forces. A particular advantage to recognizing such an offense under Article 134, UCMJ, is that it could then be treated as a lesser-included offense of an Article 95, UCMJ, violation, whereas the elements specific to orders or A.C.A. violations would normally preclude a finding of guilty of an order or A.C.A. violation as a lesser-included offense when the charge is a violation of Article 95, UCMJ. Moreover, even if the concerns expressed in the Model Penal Code are deemed valid as applied to civilian society, the need for greater acceptance of authority in military society strongly argues for an Article 134, UCMJ, remedy if the current limitation on Article 95, UCMJ, prevails.

MOLLISON, Judge (concurring in part, dissenting in part):

I dissent from the majority opinion insofar as it concludes the pleas of guilty to resisting apprehension were improvident. In *United States v. Harris*, 29 M.J. 169 (C.M.A.1989), the U.S. Court of Military Appeals first held that flight from apprehension did not constitute resisting apprehension for purposes of Article 95. In *Harris* the accused attempted to evade the police in a high speed automobile chase complete with sirens and emergency lights. The Court cited two authorities in support of its conclusion. The first observed that "while it is the duty of the citizen to submit to lawful arrest, *mere flight* to avoid apprehension does not constitute resisting an officer because there is a distinction between *avoidance and resistance or obstruction*." *Id.* at 172–73 (quoting R. Perkins, *Criminal Law* 424 (1957)); 496 (2d ed. 1969); 554 (3d ed. 1982) (emphasis added). The Court also observed the Model

Penal Code "would 'not ... criminalize flight from arrest or *non-violent* resistance thereto'" on the basis of the following rationale:

> The better response to such conduct is to authorize police to pursue fleeing persons and use force if necessary to effect arrest. When the arrest is made, prosecution may be had for the original offense. If the arrestee is innocent of that crime, it may well be thought unfair to punish him for spontaneous flight or some other reflexive act of resistance *that does not risk breach of the peace.* More to the point, authorizing criminal sanctions for any effort to avoid arrest would invite grave abuse. *Minor acts of resistance* are sufficiently ambiguous to give rise to *honest error*, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement.

*Id.* at 173 (quoting Commentary to § 242.2, *American Law Institute Model Penal Code and Commentaries* 214 (1980)) (emphasis added). Recently in *United States v. Burgess*, 32 M.J. 446 (C.M.A.1991), the Court reaffirmed that automobile chases do not demonstrate *active resistance* and therefore do not satisfy the "active resistance" element of the offense of resisting apprehension.[1] I agree it is not for us to question whether the employment of motor vehicles at high speed with attendant dangers is not active resistance or to question whether such a rule encourages attempts at evasion. Suffice to say, we must faithfully apply the rule, using our best judgment as to its purpose, scope and elements.

An accused may not enter inconsistent, improvident or uninformed pleas of guilty, and the military judge may not accept a plea of guilty to an offense without inquiring into the factual basis for the plea. Article 45(a), UCMJ, 10 U.S.C. § 845(a); Rule for Courts–Martial (R.C.M.) 910(e), Manual for Courts–Martial, United States, 1984; *United States v. Care*, 18

---

1. The Court also did not find the standard of deportment aboard military installations to be different from the streets of our cities.

U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Jemmings,* 1 M.J. 414 (C.M.A. 1976); *United States v. Jackson,* 23 M.J. 650, 652 (N.M.C.M.R.1986), *pet. denied,* 24 M.J. 405 (C.M.A.1987). The military judge is not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or inconsistencies." *Jackson,* 23 M.J. at 652. Rather, the military judge is required to deal with potential issues raised in the providence inquiry or during the trial that indicate an inconsistency or a defense. *Id.* When the accused's responses reasonably raise the question of a defense, it is incumbent upon the military judge to make a more searching inquiry. *United States v. Timmins,* 21 U.S.C.M.A. 475, 45 C.M.R. 249, 253 (1972). In this regard, before this Court will find a providence inquiry inadequate, the record must contain some reasonable ground for finding an inconsistency between the plea and the accused's statement, and reversal will not follow from the mere possibility of a conflict. *United States v. Logan,* 22 U.S.C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973); *United States v. Logan,* 31 M.J. 910, 913 (A.F.C.M.R.1990); *United States v. Tichy,* 50 C.M.R. 526, 529 (N.C.M.R.1975).

The appellant pled guilty to resisting apprehension. The appellant was informed of the elements of resisting apprehension, including the "active resistance" element. Record at 27. He admitted their accuracy. Record at 28. The military judge also conducted an extensive inquiry of the appellant. The appellant related that while he was in an unauthorized absence status, he returned to the Transient Monitoring Department (TMD) barracks aboard Naval Station Long Beach, California. There the appellant was approached by a staff member, a petty officer, and asked for his identification. The appellant intentionally pulled a pocket knife with a 3–inch blade. The appellant held the knife up and told the petty officer not to come near him. The petty officer was about 15 feet away at the time. The appellant admitted he placed the petty officer in fear of or danger of immediate bodily harm. Record at 28–30. Thereafter the following colloquy occurred between the appellant and the military judge:

MJ: With regard to the Specification under Charge II [resisting apprehension], what happened after this knife incident with Petty Officer Putas?

ACCUSED: The SDO [Staff Duty Officer] at TMD called the Base Police and they came. They told me to drop my weapon.

MJ: So, Officers Watson and Robinson appeared on the scene then? Correct?

ACCUSED: Yes, sir.

MJ: Did you still have the knife in your hand?

ACCUSED: Yes, sir.

MJ: And Petty Officer Putas was standing some distance from you?

ACCUSED: Yes, sir.

MJ: And one or both of these DOD Police Officers told you to drop your weapon?

ACCUSED: Yes, sir.

MJ: Then what happened?

ACCUSED: I ran down the hallway to a room and shut the door behind me and locked it. Then I kicked the screen out of the window and ran.

MJ: Alright [sic]. Did Officers Watson and Robinson in anyway communicate to you that they were about to apprehend you?

ACCUSED: Yes, sir.

MJ: How did they communicate that to you?

ACCUSED: They told me to drop my weapon and come with them.

MJ: Did they tell you that you were under arrest and that they were arresting you?

ACCUSED: Yes, sir.

MJ: So, there is no doubt in your mind that the police were there to settle the situation down?

ACCUSED: Yes, sir.

MJ: And they told you that they were going to apprehend you and that you would be going with them?

ACCUSED: Yes, sir.

MJ: How close were they to you?

ACCUSED: They were about 15 feet from me. The same distance that Petty Officer Putas was from me.

MJ: Do you have reason to believe that they were authorized to apprehend you?

ACCUSED: Yes, sir.

MJ: Were they in their DOD Police uniforms?

ACCUSED: Yes, sir.

MJ: Did they have weapons with them?

ACCUSED: Yes, sir.

MJ: There is no doubt in your mind that they had authority to apprehend you?

ACCUSED: No, sir.

MJ: Would you agree that under those circumstances your apprehension was reasonably necessary to maintain good order or to safeguard the personnel in the barracks?

ACCUSED: Yes, sir.

MJ: So, your resisting in this apprehension was after being put on notice by the DOD Police Officers that they were going to apprehend you and take you in?

ACCUSED: Yes, sir.

MJ: So, you took off and ran?

ACCUSED: Yes, sir.

MJ: And the purpose, of course, in running was to escape?

ACCUSED: Yes, sir.

MJ: And not be apprehended?

ACCUSED: Yes, sir.

. . . .

MJ: After you ran away from the DOD Police as I understand it you entered a room?

ACCUSED: Yes, sir.

MJ: And closed the door behind you?

ACCUSED: Yes, sir.

MJ: Then what did you do?

ACCUSED: I locked the door and went to the window and kicked out the screen.

MJ: Did you do this intentionally?

ACCUSED: Yes, sir.

MJ: What was your purpose in doing this?

ACCUSED: To escape the building through the screen window.

MJ: Alright [sic]. Did you succeed in escaping the building?

ACCUSED: Yes, sir.

MJ: What happened to the screen in escaping the building? Was it pretty much destroyed?

ACCUSED: Yes, sir.

Record at 30–33.

From the foregoing, it is apparent that the appellant fled. But he did more than just flee. He employed a weapon in the presence of the apprehending police and the threats implicit therein, he closed and locked a door behind him to obstruct his apprehension, and he destroyed property in order to effect his escape. It is true that he did not have the blood of the apprehending officers on his hands, but such is not required. His acts were acts of obstruction, not just acts of avoidance. His acts were not minor. They constituted a breach of the peace. They were violent. There was no "honest error" respecting his intentions. He pled guilty and admitted his intentions. I read *Burgess* to say that flight alone is not resistance, not that the act of flight when coupled with other acts does not constitute resisting apprehension. Even under the most liberal reading of *Burgess* and *Harris*, the appellant's resistance was active. I find no inconsistency between the appellant's plea and his statements. Accordingly, I would affirm the finding of guilty of the offense of resisting apprehension.[2]

**2.** Unlike the concurring opinion, I would hold the offense of resisting apprehension by the DoD police officers is not multiplicious with the assault upon the petty officer. Punishing the appellant for pointing a knife at the petty officer and damaging a barracks window hardly addresses one of the most serious aspects of the appellant's conduct—his resistance of the police.