DORMAN, Judge:
A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of resisting apprehension, willfully damaging private property, two specifications of assault, indecent assault, and drunk and disorderly conduct, in violation of Articles 95, 109, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 909, 928, and 934 (1994) [hereinafter UCMJ]. The approved sentence includes confinement for 12 months, forfeiture of all pay and allowances, reduction to pay grade E-l, and a bad-conduct discharge. In taking action in this case the convening authority suspended all confinement in excess of 180 days for a period of 18 months from the date the sentence was imposed.
We have carefully reviewed the record of *840 trial, appellant’s two assignments of error,[1] and the Government’s response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of appellant was committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).
Appellant first contends that his guilty plea to resisting apprehension was improvident because “[tjhere is no evidence suggesting that Appellant’s simple and reflexive efforts to evade apprehension endangered the police or otherwise amounted to that type of ‘active resistance’ necessary to support his pleas.” Appellant’s Brief and Assignment of Error at unnumbered page 5. Appellant is correct in his legal position that a conviction for resisting apprehension may not be based on mere flight. United States v. Harris, 29 M.J. 169, 173 (C.M.A.1989); United States v. Grady, 34 M.J. 1045, 1046 (N.M.C.M.R.1992).[2] Appellant is incorrect in his assertion that there is no evidence suggesting that he did anything more than mere flight.
Appellant was disruptive on the evening of 12 September 1997, probably as a result of the inordinate amount of alcohol he had consumed.[3] That evening, appellant was
loud and obnoxious, waking people up, causing ... a disturbance where the duty had to call someone to come down and try [to] stop it, and then they ended up having to call somebody down to stop it, which related to the MPs showing up, myself getting arrested and struggling — giving the MPs a struggle to arrest me----
Record at 77-78. Appellant’s aggressive behavior towards the military police began even before they could tell him he was being apprehended. When the military police were approaching him, appellant threw a rock and hit one of them, Lance Corporal J.D. Nicholson, on the leg. Record at 69. This is the same Lance Corporal who attempted to apprehend him. Appellant knew he was to be apprehended:
MJ: And why was he approaching you when you threw the rock at him? Why was he coming at you?
ACC: He’d just stepped out of the barracks of 318 on MCAS, Iwakuni. He’d just stepped out the back.
MJ: Okay. So, this is when he was responding to the call about the disturbance in the barracks?
ACC: Right.
MJ: And, I guess, he had already figured out that you were the one causing the disturbance?
ACC: Right.
MJ: So, at the time when he was approaching you and you threw the rock, what did you think he was. approaching you to do?
ACC: He was going to arrest me.
*841 MJ: All right. So then you knew that he was doing his job as a military policeman at the point—
ACC: Yes, sir.
MJ: —that you threw the rock.
ACC: Yes, sir.
Record at 70-71. LCpl Nicholson then told appellant to get down, and appellant understood that to mean that he was to lie down on the deck and that he was being apprehended. Record at 49. Rather than complying, appellant “took off running in the opposite direction.” Record at 51. When he was eventually cornered, appellant told the MPs that he did not want anyone near him and to back away from him. Record at 52. Needless to say, the MPs did not comply with his request and physically restrained him and attempted to place him in handcuffs.
MJ: Okay. They finally got them on because you were actively fighting back trying to keep them from putting them on?
ACC: Not really fighting back. They just — I kept moving my arms so they couldn’t grab this arm. They had this one [indicating]. They had the handcuff on it, just waiting for them to grab this arm, but I kept jerking away, sticking it in front of me. Because I was up against the wall and they had me pressed against it, and I just basically grabbed ahold of my own clothing to hold my arm from getting taken in.
MJ: So then they had managed to get a handcuff on, you indicated, your right arm — your right wrist, and you were waiving your left arm around though and trying to keep them from grabbing it and putting it in a handcuff; right?
ACC: Yes, sir.
Record at 52-58.
Before this court will set aside a guilty plea, we must find from the record that there is a “substantial basis” in law or fact to question the plea. United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991). Under the facts of this case we find no such basis. Prom the moment appellant saw the military police arrive on the scene he knew they were there to apprehend him. Appellant then set out to make it as difficult as possible for the military police to carry out their duties. In so doing he not only endangered himself, but he also endangered the military police. Appellant resisted apprehension. See United States v. Webb, 37 M.J. 540, 541 (A.C.M.R.1993); see also Grady, 34 M.J. at 1048 (Mollison, J., concurring in part and dissenting in part).
In appellant’s second assignment of error he claims that his guilty plea to willfully damaging private property is improvident because the record does not reflect that he specifically intended to damage the property. Appellant’s Brief and Assignment of Error at unnumbered page 7. His argument fails as to the facts as well as the law.
Earlier in the evening in which he was eventually apprehended by the military police, appellant angrily exited his barracks and came upon a bicycle belonging to a fellow Marine. Although there is no indication that this bicycle, nor the Marine, had ever done anything to appellant, he picked up the bicycle and threw it down. His actions resulted in approximately $50 in damage to the bicycle. Record at 54-58. Clearly the record reflects that appellant was throwing the bicycle to vent his anger and relieve his frustration, but just as clearly it reveals his intent to damage the bicycle.
MJ: So, your motive in throwing the bike may have been the anger you felt, but what was your purpose in throwing the bike? All right. What did you intend to happen to the bike?
ACC: For just — my purpose was to go and — when I tossed the bike, it was going to break. Something was going to happen to it.
MJ: Okay. So, you were mad, and you wanted to break something? You wanted to smash something?
ACC: Yes, sir.
Record at 58.
In arguing his case, appellant relies upon United States v. Priest, 7 M.J. 790 (N.C.M.R.1979), a case of questionable reliability.[4] The facts in Priest are readily distinguishable from those in the case at bar. Priest was charged with willfully damaging a privately- *842 owned boat. The damage resulted from his reckless operation of the boat in shallow water. This court rejected his guilty plea because he “never verbalized an intent to damage the boat.” Id. at 791. Appellant, however, acknowledged that he intended to damage the bicycle. While Priest does provide support for appellant’s position that reckless and wanton conduct which results in damage to personal property is an insufficient basis upon which to attach criminal liability for the willful destruction or damaging of private property under Article 109, UCMJ, 10 U.S.C. § 909, Priest fails to account for the language in the applicable Manual for Courts-Martial that, “[wjillfulness may be shown by direct evidence, ... or circumstantially, as by the manner in which the acts were done.” Manual for Courts-Martial, United States, 1969 (Revised ed.), II 188b. The last clause of this provision is repeated in the current Manual. See Manual for Courts-Martial, United States (1995 ed.), Part IV, 1133c(2).
Ignoring the manner in which willfulness can be proved also ignores the longstanding principle that “[ajs a rule of circumstantial evidence, a court-martial is certainly free to infer that a sane person intends the natural and probable consequences of his conduct.” United States v. Christensen, 4 C.M.A. 22, 15 C.M.R. 22, 25, 1954 WL 2245 (1954). Even absent appellant’s express statement that he intended to break or smash something, under the facts of this case his willfulness is readily inferred. There is a qualitative difference between operating a boat in a reckless manner, only to have it damaged by objects under the water, and picking up an object and throwing it down. Appellant’s citation to and reliance upon Priest is not persuasive. Appellant’s second assignment of error is meritless.
Accordingly, the findings and sentence approved on review below are affirmed.
Senior Judge CLARK and Judge LEO concur.

. I. THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT’S PLEAS TO ADDITIONAL CHARGE I AND THE SPECIFICATION THEREUNDER (VUCMJ, ART. 95, RESISTING APPREHENSION) WHEN THE PROVIDENCE INQUIRY ESTABLISHED THAT THE ALLEGED ACT OF RESISTANCE WAS APPELLANT’S "MERE FLIGHT” FROM A MILITARY POLICEMAN.
II. THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT’S PLEAS TO ADDITIONAL CHARGE II AND THE SPECIFICATION THEREUNDER (VUCMJ, ART. 109, WILLFUL DESTRUCTION OF NON-MILITARY PROPERTY) WHEN THE PROVIDENCE INQUIRY ESTABLISHED ONLY THAT APPELLANT’S DESTRUCTION OF THE PROPERTY WAS "RECKLESS”.

. Apparently none of the judge advocates involved in appellant’s court-martial was aware of the fact that mere flight is legally insufficient to constitute the offense of resisting apprehension. While advising appellant of the elements of this offense, the military judge asked counsel concerning the "actus reus,” as to how appellant had resisted. Defense counsel responded, “by running away.” Record at 46. The military judge then completed his advisement to appellant concerning the elements of the offense, that “[y]ou actively resisted the apprehension by running away....” Id. Trial counsel sat by silently. The military judge did, however, advise appellant that resistance had to be active and "that the mere use of words or protests or using abusive language in opposition to the attempted apprehension does not amount to the offense of resisting apprehension.” Record at 47.

. Appellant’s providence inquiry revealed that between 1800 and 0200 he had consumed 18 to 24 beers contained in 12 and 32 ounce containers! Record at 74.

. Since Priest was decided almost 20 years ago it has been relied upon in only one other reported *842 case. See United States v. Garcia, 29 M.J. 721, 722-23 (C.G.C.M.R.1989).